PEOPLE v WRIGHT

1. Criminal Law—Jury—Evidence—Inquiry.

Judge's reply to jury's question as to whether defendant was right-handed or left-handed that he could not answer the question because they must rely upon the evidence presented was proper where defendant had not testified in his own behalf.

2. Criminal Law—Jury—Evidence—Inquiry.

Absent a request by defense counsel to reopen the proofs after the case had been submitted to the jury, the trial court did not err in failing to reopen, *sua sponte,* the proofs to answer the jury's questions as to whether defendant and the complainant were right-handed or left-handed.

3. Criminal Law—Jury—Inquiry—Discretion.

Judicial discretion is not abused where the jury is directed to deliberate further on questions posed by it to the court, so long as the possibility of having testimony read back to them, as they have requested, is not ruled out.

4. Criminal Law—Advice of Rights—Subsequent Statement.

Admission of defendant's statement to interrogating police officer that he was elsewhere at the time a breaking and entering was committed, did not violate defendant's privilege against self-incrimination where defendant had been previously informed of his constitutional rights and at no time during interrogation did he indicate that he wanted the questioning to cease.

5. Criminal Law—Prosecutor's Remarks—Preserving Question.

Prosecutor's comments or remarks in oral argument will not be considered on appeal in the absence of a timely defense objec-

---

References for Points in Headnotes

[1, 2] 41 Am Jur 2d, Jury § 14.
  53 Am Jur, Trial § 156 *et seq.*
[3] 53 Am Jur, Trial § 904.
[4] 29 Am Jur 2d, Evidence §§ 555–557.
[5] 4 Am Jur 2d, Appeal and Error § 541.
[6] 58 Am Jur, Witnesses § 716.

tion to them at trial where the remarks are not so prejudicial or improper as to call for reversal.

6. CRIMINAL LAW—EVIDENCE—PRIOR CRIMINAL ACTS—OPENING DOOR.

Complainant's testimony regarding a prior criminal complaint which he had made against defendant, elicited by defense counsel to show complainant's predisposition of ill will towards defendant, entitled the prosecutor to produce and question witnesses to clarify the evidence on the prior charge to combat defendant's claims.

Appeal from Kent, George V. Boucher, J. Submitted Division 3 May 8, 1972, at Grand Rapids. (Docket No. 11652.) Decided June 26, 1972.

Solomon Wright, III, was convicted of breaking and entering. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Larry R. Farmer,* Assistant Defender, for defendant.

Before: R. B. BURNS, P. J., and HOLBROOK and O'HARA,* JJ.

HOLBROOK, J. Solomon Wright, III, was arrested at the Grand Rapids Police Station by Detective William Pettiford on September 14, 1970. Mr. Wright had voluntarily responded in person to a police card left at his residence requesting him to contact Detective Pettiford. Solomon Wright was charged with breaking and entering a restaurant building on August 26, 1970, in violation of MCLA

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

750.110; MSA 28.305. James M. Parker, manager of the First Choice Barbecue, testified to having caught defendant in the act of breaking and entering his place of business.

Fingerprinting tests run by Officer Frank Phillips at the scene of the alleged crime produced a number of smudged and clear prints. One of the clear prints, a left-hand palm print, belonged to Mr. Wright.

Defendant entered a defense of alibi which was supported by five witnesses. These witnesses testified to having seen and talked with Mr. Wright while he umpired and played baseball at the time the crime was alleged to have occurred.

The jury returned a verdict of guilty as charged and subsequently, on March 8, 1971, defendant was sentenced by the trial court to a term of from 3-1/2 to 10 years in prison. It is from his trial conviction and sentence that Solomon Wright appeals. Present counsel did not represent the defendant at trial.

Defendant raises three issues on appeal which we restate and consider in order.

I.

Did the trial court improperly answer questions asked by the jury after it had commenced its deliberations?

The jury, in the instant case, was instructed on the law on January 20, 1971, and retired to deliberate at 4:18 p.m. Subsequently, the jury presented the court with three questions: (1) could the jury have all the exhibits; (2) is Solomon Wright right-handed or left-handed; and (3) is complainant Parker right-handed or left-handed? The jury was

returned to the courtroom at 4:40 p.m. Thereupon the court addressed itself to the jury's questions:

"You have asked for the exhibits. Those have been gathered and will be brought into the juryroom after you return.

"Now, your two questions, is Solomon right-handed or left-handed and is Mr. Parker right-handed or left-handed.

"Ladies and gentlemen, as I advised you during the charge, you must rely on only the evidence which was presented to you during the course of the trial, and your memories of what the evidence was from the testimony that constituted the evidence, as well as the exhibits. If there were matter that were not put into evidence, then those matters you will just never hear.

"What I am trying to say is that I can't answer your questions. If there was testimony on these questions, then that is what you have. If there wasn't, then you don't—you won't have answers.

"Have I made myself clear?

"All right, thank you very much. Would you return to the juryroom, please?"

Defense counsel immediately raised objection to the court's additional instruction:

"*Mr. Titta:* I have an objection, your Honor, that I would like to state for the record—not to the wording or phrasing that was used, but the fact that it didn't go farther. The fact that the jury should have been told that if they find there is evidence or missing evidence— missing portions of the case, that they can use that to conclude that there is a reasonable doubt, and I think the jury should have been told that, that the fact if they feel the evidence in this case is incompetent, that does raise a reasonable doubt as to the guilt of Mr. Solomon Wright to the offense committed."

The trial court did not rule on this objection of defense counsel which we construe as a denial of the same.

The exhibits were given to the jury as requested. The second question—"is Solomon Wright right-handed or left-handed?" could not possibly be answered for the reason that defendant had elected not to take the stand in his own behalf. The answer to this question could only be supplied by the defendant and at no time did he offer to take the witness stand. As to the last question, the defendant now asserts for the first time that the court should have, on its own motion, reopened the proofs to permit the questions of the jury to be answered specifically. The defendant has not furnished this Court with any authority or precedent for such an unusual procedure. Defendant further alleges that "had the testimony been reopened the prejudice to appellant might well have been eliminated". To this allegation, we can only remark with the question—*what prejudice* "might well have been eliminated"? Absent a request by defense counsel to reopen the proofs after the case had been submitted to the jury, we conclude that the trial court would have been standing on legal quicksand to have reopened the testimony. See 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 610, pp 790–791, and *People v George,* 375 Mich 262 (1965).

The trial court properly instructed the jury in the main charge. The objection of defendant's attorney on the record did not call for a reiteration of that charge as to the burden of proof and the sufficiency of the evidence.

Subsequent to the court's additional instruction, the jury retired for a second time. After 28 minutes of further deliberation, the jury again submitted three more questions to the court: (1) Verify if exhibit No. 3 (photo of fingerprints) shows a right or left palmprint; (2) Is the print shown on exhibit

No. 3 the top or the bottom of the meat turner; and (3) Could the reporter read back that portion of the testimony. The court returned the jury at 5:10 p.m. and responded to its request, thusly:

"Ladies and gentlemen, I can't answer factual questions for you. You must determine the true facts from the evidence which was presented to you during the course of the trial. And, in order to do that, you must search your own memories as to what evidence was produced at trial. I can ask the court reporter to read back clearly identified selections of testimony of any given witness if you request and identify it for us. If such a procedure is used, however, you should realize it takes quite a bit of time for the court reporter to find that testimony, and if it is any length, quite a bit of time to read it.

"I will request you to return to the juryroom, review whether you really need these questions answered. If you feel you do have to have them answered, search your own memories for the answers. If you are then convinced that none of you—or to your satisfaction enough of you cannot remember what you feel is pertinent in these questions, then write me another note identifying precisely what witness's testimony you wish reread and we can do that."

The jury returned to its deliberations at 5:15 p.m. and remained at the task until 5:50 p.m. when a verdict of guilty was returned to the court. The law is clear that judicial discretion is not abused where the jury is directed to deliberate further on questions posed by it to the court, so long as the possibility of having testimony read at a later time is not ruled out. *Klein v Wagenheim,* 379 Mich 558 (1967); *Zaitzeff v Raschke,* 31 Mich App 87 (1971). The trial court followed this procedure in the instant case. Further, the attorney for the defendant stated "defense has no objection to

the statement and phrasing". We find no error as to the first issue raised.

## II.

Was it prejudicial error for the prosecution to show what defendant had said concerning an alibi when he was interrogated subsequent to his having been advised of his *Miranda* rights?

During the direct examination of Officer William Pettiford, the prosecution elicited details of the officer's initial interrogation of defendant September 14, 1970. Officer Pettiford testified in part as follows:

"On September the 14th, approximately 1:50 or 1:55 when I came into the—I was in the Detective Bureau after lunch. I was informed that a gentleman wanted to see me. It was Mr. Wright.

"I got the warrant. I got the constitutional rights card, and I got the police report form. I took Mr. Wright into the detective bureau interrogation room. I asked Mr. Wright could he read and write, and he said yes. I gave him his constitutional rights card and asked him if he would read it, and he did. After reading the card, I asked him did he understand his rights. He said that he did. I asked him would he sign the card showing that he had read the card and that he understood his rights, that he was not signing any confession. This he did. I showed Mr. Wright the warrant—the breaking and entering warrant. I also read the police report form to Mr. Wright, and Mr. Wright denied it.

"*Q. [By Mr. Zerial, Assistant Prosecuting Attorney]:* This police report form was what? The investigating officer's report, is that it?

"*A.* That was Officer Gary Jager's report that he took at the scene.

"I read the police report to Mr. Wright and he denied it. I asked him where he was on August the 26th, 1970, at approximately 7:25 p.m. He said that he was at Buckley Field. I asked him what he was doing down at

Buckley Field, and he told me that he umpired four innings, and then he kept score, and I asked him who that he was down at Buckley Field with, and he told me a lot of people. I asked him for names, but he did not give me any. That was the extent of the conversation.

"I then took Mr. Wright to district court, where he was arraigned on the charge.

"*Q.* Now, you asked him at that time—well, you asked him for some names, is that correct?

"*A.* Yes, sir.

"*Q.* Did you receive any names from him?

"*A.* I did not.

"*Q.* Did he indicate why, or did he just refuse, or what did he say in reply?

"*A.* Didn't answer.

"*Q.* Did you ask him again?

"*A.* No, sir. I didn't. I asked him once.

"*Q.* Is there any reason why you didn't?

"*A.* Why I didn't? I though that one question was sufficient. I don't try to browbeat anybody. I asked him one question. If I get no answer, that is it.

"*Q.* He said he—excuse me—he umpired four innings; then he scored part of the game?

"*A.* He umpired four innings. Then he kept score."

The defendant now asserts that the admission of the subject testimony violated defendant's constitutional right to remain silent under the Fifth Amendment as applied by the Fourteenth Amendment of the Federal Constitution to the states. *Malloy v Hogan,* 378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964); and *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

We are bound by the record which discloses that Mr. Solomon Wright knowingly waived his rights under *Miranda.* It was beneficial to his case to show by his statement to Mr. Pettiford that he denied the criminal act and disclosed his whereabouts as being elsewhere at the purported time that the offense took place. His failure to disclose

who was present with him at the time, absent an indication that he desired to have the interrogation stopped, is not violative of the rules set down in *Miranda.* No objection to the questioning of the officer was made at the time, nor at any time in the trial court. Error should not be assigned upon the admission of testimony where no objection was made and no motion was made to strike it from the record. *People v Loudenslager,* 327 Mich 718 (1950); *People v Borowski,* 330 Mich 120 (1951); *People v Bauman,* 332 Mich 198 (1952).

Defendant also asserts that the prosecutor improperly referred to the subject interrogation testimony of the defendant in his final argument. Defendant failed to make any objections to these claimed improper arguments at trial. In such a situation the law is clear; the comments or remarks of the prosecutor in oral argument will not be considered on appeal in the absence of timely objection thereto at the trial by defendant. *People v Haley,* 48 Mich 495 (1882); *People v Giddings,* 159 Mich 523 (1910); *People v Savage,* 225 Mich 84 (1923); *People v Zesk,* 309 Mich 129 (1944); *People v Hancock,* 326 Mich 471 (1950); and *People v Edwards,* 35 Mich App 233 (1971).

We have carefully examined the now objected to remarks of the prosecutor and find that they were not so prejudicial or improper as to call for reversal, especially in view of the fact that no objections were made at the trial. They did not call for any exceptions to the general rule that objections to oral argument not made at trial but made for the first time on appeal will not be considered. *People v Goldberg,* 248 Mich 553 (1929); *People v Connors,* 251 Mich 99 (1930).

We find no reversible error committed in regard to defendant's second issue raised on appeal.

## III.

Was the testimony, tending to show that the defendant had committed a prior criminal act, prejudicial error requiring reversal?

The prosecution witness, James M. Parker, testified under defense counsel's cross-examination to having signed a previous criminal complaint against Solomon Wright. A part of Mr. Parker's testimony is as follows:

> "*Q. [By Mr. Titta, defense counsel]:* In fact you signed a complaint against him, did you not?
> "*A.* (No response)
> "*Q.* A criminal complaint?
> "*A.* Sure I did.
> "*Q.* Alleging that he broke some windows?
> "*A.* Yeah.
> "*Q.* And I believe you also told us that you believe that Mr. Wright owes you some money?
> "*A.* Believe?
> "*Q.* Think.
> "*A.* I said he did.
> "*Q.* He did?
> "*A.* (Nodding head)
> "*Q.* Did you ever testify against Mr. Wright in that case?
> "*A.* Yes, I think I did on a breakin, on a B and E."

Witness Parker, however, did not remember whether defendant had been convicted on the charge. He did remember that he had never been compensated for the damage allegedly caused by Solomon Wright.

It is clear from the trial court that defense counsel elicited the foregoing testimony to show complainant Parker's predisposition of ill will towards Mr. Wright, and the defendant's claim that the instant criminal proceeding was a way of "getting back at Mr. Wright."

The prosecutor thereafter questioned Mr. Parker as follows:

"*Q.* Why do you remember Mr. Wright?

"*A.* 'Cause we were—well, you might call it a friend. I mean, I'm not here to prosecute nobody for what—just to, you know, a get a kick out of it or anything. I have nothing against Mr. Wright at all. I wish it hadn't happened, but he did break in my place.

"*Q.* Right, and that charge you're talking about, that charge was not for breaking out windows, was it?

"*A.* No, that's the way they got in the place.

"*Q.* Do you know what the charge was exactly?

"*A.* Breaking and entering."

Subsequently, the prosecutor recalled Officer William Pettiford and asked him the following:

"*Q.* It has been established there was a breaking of windows and a charge of breaking and entering leveled against the defendant by Mr. Parker at that time.

"*A.* 1967, yes, sir.

"*Q.* Do you know what happened to that case? What its disposition was?

"*A.* No, sir, I do not.

"*Q.* Did anybody ever contact you, or in any way indicate to you what had happened, or what was going to happen in this case, in any way?

"*A.* No, sir.

"*Q.* To this date, to your personal knowledge, do you know what happened to that case?

"*A.* I do not.

"*Q.* Or why it happened, if anything happened?

"*A.* No, sir, I do not. I was never informed what happened to the case."

It is this testimony of Mr. Parker and Officer Pettiford concerning the 1967 breaking and entering that defendant now asserts is reversible error. We point out that this testimony in the first

instance was elicited from Mr. Parker by defendant's counsel. Defendant thus opened the door to the subject testimony and cannot complain because the prosecutor questioned the witnesses to clarify the evidence on the subject and combat the claims of defendant that Mr. Parker had ill will towards the defendant. A defendant cannot complain that certain evidence is prejudicial when he himself brings it into the case. When there is no objection, he can bring this evidence before the jury, but once he has accomplished his purpose, he cannot then prevent the prosecutor from pursuing the subject in an endeavor to fully present the facts. *People v Rodriquez,* 35 Mich App 342 (1971); *People v Claugherty,* 36 Mich App 648 (1971).

No prejudicial error resulted.

Affirmed.

All concurred.