PEOPLE v HOWE

Opinion of the Court

1. Trial—Reading Testimony to Jury—Discretion.

The general rule is that when a jury requests that testimony be read back to it both the reading and extent of reading is a matter confided to the sound discretion of the trial judge and contained within this case-law rule is the recognition that a jury will at times require testimony read back to it to resolve a disagreement or correct a memory failure; a trial court must exercise its discretion to assure fairness and to refuse unreasonable requests but it cannot simply refuse to grant the jury's request for fear of placing too much emphasis on the testimony of one or two witnesses.

2. Homicide—Manslaughter—Reading Testimony to Jury—Discretion.

Trial judge abused his discretion by failing to properly consider what appears to have been a reasonable request on the part of the jury at a trial which resulted in defendant's conviction of manslaughter where it asked to rehear the testimony of the only two witnesses to the events surrounding the death of the victim, the judge did not indicate that he thought the request was unreasonable and neither did he ask the jury to resume deliberations with the knowledge that their request would again be reviewed if the jury members continued to find it necessary to rehear certain testimony (MCLA 750.321).

3. Trial—Reading Testimony to Jury—Harmless Error.

Trial judge's error in failing to grant a jury's reasonable request to reread the material testimony cannot be said to be harmless error beyond a reasonable doubt.

4. Trial—Reading Testimony to Jury—Appeal and Error—Failure to Object.

Counsel's failure to object was irrelevant to the resolution of an

References for Points in Headnotes
[1–5, 7] 53 Am Jur, Trial §§ 937–940.
[6] 5 Am Jur 2d, Appeal and Error § 553.

appeal because the actions of the trial judge bypassed the adversary function of defendant's counsel where, after the judge informed counsel of the jury's request that testimony of certain witnesses be reread, he immediately stated that he would not grant the request.

DISSENTING OPINION

M. S. COLEMAN and J. W. FITZGERALD, JJ.

5. TRIAL—READING TESTIMONY TO JURY—DISCRETION—APPEAL AND ERROR.

*A general rule of long standing that the reading of any testimony and the extent to which it is read is within the sound discretion of the trial court was ignored by a trial judge, in observing that the "burden of decisions in this state frown upon the practice of granting juror requests to repeat testimony other than reading the whole record"; however, a careful reading of the trial judge's response to the jury request that the testimony of two substantive witnesses be repeated indicates that he did not consider himself absolutely bound to refuse the request, his reference to authoritative precedent as the "burden of decisions" seems to reflect an awareness of decisions holding to the contrary, and, while the implication does not serve to rectify the trial judge's misconception of the law, his observation that the case was short and that few witnesses were involved suggests that his exercise of judicial discretion appears to have resulted in his refusal to have the testimony repeated for the jury; review of the record does not disclose any confusion in the minds of the jurors regarding the factual testimony received from the witnesses where the jurors were provided with a view of the apartment building where the crime occurred and had deliberated for more than an hour prior to their request, the verdict was arrived at a short time later without any indication of difficulty or disagreement, and where the totality of the circumstances persuades the Michigan Supreme Court that no miscarriage of justice occurred where the verdict was arrived at without repeating testimony once heard.*

6. APPEAL AND ERROR—PRESERVING ISSUES—OBJECTION—MANIFEST INJUSTICE—STATUTES.

*Appellate courts, absent objection below, will not consider issues raised for the first time on appeal unless manifest injustice results (MCLA 769.26).*

7. TRIAL—READING TESTIMONY TO JURY—DISCRETION—APPEAL AND
    ERROR.

> *The decision to comply with a request that selected portions of
> testimony be repeated for the jury remains solely within the
> discretion of the trial judge and where the court denies such
> request appellate courts must review the record to determine
> the context in which the refusal was made, noticing any
> expression or intimation by the trial court regarding the rea-
> sonableness of the request; where further review of the record
> discloses no confusion or ambiguity and none is evinced by the
> jury, it is not prejudicial error for the trial court to refuse a
> jury request that testimony be repeated; and, while conceding
> to the jury that their request may subsequently be granted in
> the event further deliberations prove fruitless may be appropri-
> ate in some circumstances, the failure to do so does not auto-
> matically result in reversible error where a review of the
> record substantiates the trial court's refusal to grant the jury
> request.*

Appeal from Court of Appeals, Division 1, Bron-
son, P. J., and V. J. Brennan and Walsh, JJ., af-
firming Recorder's Court of Detroit, Elvin L. Da-
venport, J. Submitted June 6, 1974. (No. 18 June
Term 1974, Docket No. 55,218.) Decided September
6, 1974.

John C. Howe was convicted of voluntary man-
slaughter. Defendant appealed to the Court of
Appeals. Affirmed. Defendant appeals. Reversed
and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Luvenia D.
Dockett,* Assistant Prosecuting Attorney, for the
people.

*Stuart M. Israel,* Assistant State Appellate De-
fender, for defendant.

SWAINSON, J. For the purposes of this appeal we adopt appellant's "Statement of Facts".

This "Statement of Facts" has been expressly accepted by the people and accurately reflects the proceedings below.

"Defendant-Appellant John Clovis Howe was convicted by a jury in Detroit Recorder's Court of Manslaughter (MCLA 750.321; MSA 28.553) on June 2, 1970 arising out of the strangulation death of Marjorie Lathrop. On June 17, 1970, Defendant Howe was sentenced to five to fifteen years imprisonment.

"At trial, the prosecutor called eight witnesses, Cooper, Barnes, Riedel, and Loch, police officers who testified to their participation in the investigation, Corrigan from the Wayne County Medical Examiner's office who testified to cause of death, Hindman, an osteopathic physician who testified to examining the deceased at the scene, Erlene Howe, called after both sides had rested, who testified that she advised police a missing endorsed witness was in Nebraska, and Geraldine Bowman.

"Witness Bowman testified that she lived in the apartment building in question and knew both the defendant and deceased. She testified that on the day of the death she saw Defendant and the deceased together in the hallway of the apartment building and that she spoke with them. She testified that she returned to her apartment and that, shortly thereafter, she heard scuffling, fighting, the deceased screaming, and the Defendant 'cussing' the deceased coming from somewhere in the hallway. She also testified that, at that time, she looked out of her window and saw an unknown man who she testified was a friend of Defendant put a tire iron in a car and return to the apartment building.

"Throughout cross-examination, defense counsel extensively questioned witness Bowman about the physical layout of the apartment building and the location of the source of the noises and about the unknown man she saw in the apartment building and through her window.

"The sole defense witness was Nora VanDusen. She

testified that she lived in the apartment building and that she knew the deceased. She testified that on the day of the death the deceased spent the hours from eight to noon and one-thirty to three in her (the witness') apartment. Witness VanDusen testified that the deceased avoided her own apartment as she was afraid of her boyfriend. She also testified to seeing an unknown man coming out of the back door of the apartment building on the afternoon of the death.

"During cross-examination, re-direct examination, and re-cross examination, witness VanDusen was questioned about the physical layout of the building.

"After an hour and twenty minutes of diliberation *[sic]*, the jury requested a view of the apartment building, particularly of the hallway. The trial judge recognized that the drawings used at trial were confusing and he granted the view.

"After the view the jury resumed deliberations until they submitted a request for the testimony of witnesses Bowman and VanDusen to the trial judge:

" '*The Court:* I had a request from the foreman of the jury. Would you please give us the transcript of the two women witnesses. The answer is no. I will tell them that I don't do that. Nothing short of a reading of the entire record. To give jurors bits of testimony puts too much emphasis on it.

" 'All right. Call the jury.'

*(Jury returns to the courtroom).*

" '*The Court:* For the record, ladies and gentlemen, your foreman, Mr. Gordon, has addressed a note to the Court that reads, "Dear Sir: Would you please give us the transcript of the two women witnesses". Signed by the foreman of the jury.

" 'Ladies and gentlemen, this has been a relatively short case. There were very few witnesses, and you will have to remember it. Now, the reason I won't do it is because the decisions that I am guided by frown upon the practice of having read back and the reporter would have to read it back, portions of the testimony of certain witnesses because it places entirely too much emphasis on the testimony of one witness and you must consider it all, all that bore upon this case. I cannot

grant your request because the burden of decisions in
this case—in this state frown upon the practice other
than reading the whole record and it would take us a
long time to read that back, as long as it took the
reporter to take it, perhaps, so you will have to rely on
your memory. This was a short case.

    " 'All right, you may return to the jury room and
continue your deliberations.'

    *(Jury retires to the jury room to continue delibera-
tion.)*

    "The jury continued deliberation and eventually re-
turned a guilty verdict. On August 24, 1973, the Court
of Appeals affirmed Defendant's conviction. On Septem-
ber 4, 1973, Defendant filed an application for Leave to
Appeal, which this · Court granted on December 19,
1973."

    The single issue before this Court for resolution
is whether the trial court denied defendant a fair
trial by failing to grant the jury's request for a
reading of the testimony of the two principal
witnesses in this case?

                            I

    It has been acknowledged by both the people
and the appellant that the trial court was in error
when it stated what it considered to be the control-
ling rule of law governing the reading back of
testimony. The correct Michigan rule is very clear:

    "The general rule, well established, is that when a
jury requests that testimony be read back to it both the
reading and extent of reading is a matter confided to
the sound discretion of the trial judge. See *Klein v
Wagenheim,* 379 Mich 558, 561 [153 NW2d 663] (1967);
*People v Walker,* 371 Mich 599, 610 [124 NW2d 761]
(1963); *Rumptz v Leahey,* 26 Mich App 438, 443 [182
NW2d 614] (1970).

    "In *Klein v Wagenheim, supra,* p 561, the Michigan
Supreme Court considered and rejected the argument

that it is not proper to read any testimony, unless all the testimony is read, because otherwise there would be a tendency to emphasize what is read. The Court declared: 'This is not now and never has been the law in Michigan'." *People v Turner,* 37 Mich App 162, 165; 194 NW2d 496 (1971).

Contained within this case-law rule is the recognition that a jury will at times require testimony read back to it to resolve a disagreement or correct a memory failure. A trial court must exercise its discretion to assure fairness and to refuse unreasonable requests; but, it cannot simply refuse to grant the jury's request for fear of placing too much emphasis on the testimony of one or two witnesses. The Supreme Court of New Jersey in *State v Wolf,* 44 NJ 176, 185; 207 A2d 670, 675–676 (1965), elaborated further upon this point:

"When a jury retires to consider their verdict, their discussion may produce disagreement or doubt or failure of definite recollection as to what a particular witness said in the course of his testimony. If they request enlightenment on the subject through a reading of his testimony, in the absence of some unusual circumstance, the request should be granted. The true administration of justice calls for such action. Where there is a doubt in the minds of jurors as to what a witness said, it cannot be prejudicial to anyone to have that doubt removed by a rehearing of his testimony. There is no need to be chary for fear of giving undue prominence to the testimony of the witness. If under our system of trials a jury is to be considered intelligent enough to be entrusted with powers of decision, it must be assumed they have sense enough to ask to have their memories stimulated or refreshed only as to those portions of the testimony about which they are in doubt or disagreement. It must be assumed also that if they had any similar doubts or disagreements about statements of other witnesses they would seek the same remedy."

See also, American Bar Association Project on Minimum Standards for Criminal Justice, *Trial by Jury,* § 5.2.

Returning to the present case we note that the jury asked to rehear the testimony of the only two witnesses to the events surrounding the death of the victim, Marjorie Lathrop. The trial judge did not indicate that he thought the request was unreasonable. Neither did he ask the jury to resume deliberations with the knowledge that their request would again be reviewed if the jury members continued to find it necessary to rehear certain testimony. See, *Klein v Wagenheim,* 379 Mich 558, 561–562; 153 NW2d 663 (1967); *People v Wright,* 41 Mich App 518, 523; 200 NW2d 362 (1972). The trial judge abused his discretion by failing to properly consider what appears to have been a reasonable request on the part of the jury.

## II

The people urge that even if the trial judge incorrectly interpreted the law, " * * * the totality of the circumstances and the fact that the jury had not specifically referred to any specific testimony which caused them some concern, and because the jury continued deliberating without showing any further confusion, * * * that there was no manifest or serious error committed by the trial court." In addition, the people would also have us limit our review because appellant's trial counsel failed to timely object to the judge's decision.

We are factually unable to accept the people's arguments. The trial judge never indicated to the jury that a more specific request would be granted nor did he indicate that their request could be entertained at a later point in their deliberations.

He quite clearly stated that he could not grant their request.

The court also instructed the jury to "rely on your memory" thus directing them to attempt to reach a verdict based upon what they were able to recall from the trial testimony. We have no knowledge, of course, of the extent of the jury's confusion. We do know, however, that the trial court earlier granted the jury's request to view the premises after the jury foreman stated that the jury members were confused by the floor plans presented at trial. Both witnesses Bowman and Van Dusen had testified extensively in relation to these drawings. In addition, our independent reading of their testimony reveals that there was a great deal of confusion present in the questioning and the witnesses' answers. We cannot say that the trial judge's error in failing to consider the jury's reasonable request to reread material testimony, when viewed in the context of the entire record, was harmless error beyond a reasonable doubt. MCLA 769.26; MSA 28.1096; *People v Liggett,* 378 Mich 706, 717; 148 NW2d 784 (1967); *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972).

Finally, we find counsel's failure to object irrelevant to the resolution of this appeal. After the trial judge informed counsel of the jury's request, he immediately stated that he would not grant the request. The actions of the trial judge bypassed the adversary function of defendant's counsel.

The Court of Appeals is reversed and the case remanded for a new trial.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, WILLIAMS, and LEVIN, JJ., concurred with SWAINSON, J.

J. W. FITZGERALD, J. *(dissenting)*. Defendant's

jury conviction of voluntary manslaughter[1] in De-
troit Recorder's Court was affirmed by the Court of
Appeals and we granted leave to appeal. Before us
is the narrow issue of whether reversible error
occurred where the trial court, without objection
by defendant, refused to grant the jury foreman's
request that the testimony of two substantive wit-
nesses be repeated for the jury where refusal was
based upon an erroneous understanding of the
law. In our view, this error was not prejudicial and
the conviction is affirmed.

The facts and circumstances surrounding the
strangulation death of Marjorie Lathrop appear in
the testimony of witnesses Geraldine Bowman and
Nora Van Dusen, neighbors of the deceased resid-
ing in the same apartment building. Witness Bow-
man observed the defendant, together with the
deceased, in the hallway outside her apartment.
Later, from inside, she overheard scuffling and
fighting, cries of "help" and "don't" from the
deceased, and defendant's reference to her as a
"no-good red-headed whore". She further testified
that she observed from her apartment window an
unknown man place a tire iron in a car and return
to the apartment building.

Witness Van Dusen testified that the deceased,
attempting to avoid her boyfriend, spent the hours
of 8 a.m. to noon and 1 p.m. to 3:30 p.m. in her
(witness Van Dusen) apartment. She overheard the
deceased request the defendant for assistance in
gaining entrance to room #26, just down the hall.
The witness' husband, then approaching, rendered
assistance in lifting defendant through the tran-
som. Entrance gained, the witness and her hus-
band left the apartment building, leaving their
two-month-old daughter in the care of Miss La-

---

[1] MCLA 750.321; MSA 28.553.

throp. Returning 45 minutes later, they observed a
man exiting the back door of the apartment build-
ing. Defendant opened the front door for the wit-
ness and her husband. Upon entering their apart-
ment, they discovered their daughter alone and
soon after learned of Miss Lathrop's death.

The jury deliberated an hour and 20 minutes
before requesting a view of the apartment build-
ing. This view granted, they resumed deliberations
later requesting that the testimony of witnesses
Bowman and Van Dusen be repeated for them.
The Court responded:

"*The Court:* I had a request from the foreman of the
jury. Would you please give us the transcript of the two
women witnesses. The answer is no. I will tell them
that I don't do that. Nothing short of a reading of the
entire record. To give jurors bits of testimony puts too
much emphasis on it.

"All right. Call the jury.

*(Jury returns to the courtroom.)*

"*The Court:* For the record, ladies and gentlemen,
your foreman, Mr. Gordon, has addressed a note to the
Court that reads, 'Dear Sir: Would you please give us
the transcript of the two women witnesses'. Signed by
the foreman of the jury.

"Ladies and gentlemen, this has been a relatively
short case. There were very few witnesses, and you will
have to remember it. Now, the reason I won't do it is
because the decisions that I am guided by frown upon
the practice of having read back and the reporter would
have to read it back, portions of the testimony of
certain witnesses because it places entirely too much
emphasis on the testimony of one witness and you must
consider it all, all that bore upon this case. I cannot
grant your request because the burden of decisions in
this case—in this state frown upon the practice other
than reading the whole record and it would take us a
long time to read that back, as long as it took the
reporter to take it, perhaps, so you will have to rely on
your memory. This was a short case.

"All right, you may return to the jury room and continue your deliberations."

Defense counsel did not object to this ruling by the court. The jury continued its deliberations eventually returning a verdict of guilty.

Defendant first argues that a new trial should be granted because the judge's refusal was not based upon a reasoned exercise of discretion, but rather an erroneous understanding of Michigan law. The identical error occurred in the case of *Klein v Wagenheim*, 379 Mich 558; 153 NW2d 663 (1967), where the trial court incorrectly considered it improper to read any testimony back to the jury using stenographer notes unless the entire testimony was repeated for them. Citing *People v Heard*, 388 Mich 182; 200 NW2d 73 (1972), defendant perceives a similar unawareness of the right to exercise judicial discretion where the trial court erred reversibly in ruling that under no circumstances in criminal matters could jurors ask questions of witnesses.

The absolute nature of the refusal which unalterably rejected the jury's request is advanced as further support in challenging the trial court's ruling. Unlike *Klein,* which allowed for the possibility of a subsequent affirmative response to the jury's request, the trial court here unequivocally precluded such a possibility. It is argued that the possibility of having the testimony read to them at a later time must not be ruled out in order to avoid the charge of abuse of discretion. *People v Wright,* 41 Mich App 518; 200 NW2d 362 (1972).

In observing that the "burden of decisions in this state frown upon the practice of granting juror requests to repeat testimony other than reading the whole record", the judge is said by defendant to have ignored a general rule of long standing

that the reading of any testimony and the extent to which it is read is within the sound discretion of the trial court. *Klein, supra,* at 561. However, a careful reading of the trial court's response to the jury request indicates that he did not consider himself absolutely bound to refuse the request. Reference to authoritative precedent as the "burden of decisions" in the trial court's statement seems to reflect an awareness of decisions holding to the contrary.[2] Moreover, while this implication does not serve to rectify the trial judge's misconception of the law, his observation that the case was short and that few witnesses were involved suggests that his exercise of judicial discretion appears to have resulted in his refusal to have the testimony repeated for the jury. Our review of the record does not disclose any confusion in the minds of the jurors regarding the factual testimony received from the two witnesses. The jurors were provided with a view of the apartment building and had deliberated for more than an hour prior to their request. The verdict was arrived at a short time later without any indication of difficulty or disagreement. The totality of the circumstances

---

[2] A position contrary to that adopted by the trial judge need not take the form of *requiring* the trial court to repeat portions of testimony requested by the jury. Indeed, no such authority exists. Rather, it logically focuses upon the proper exercise of judicial discretion in determining whether or not the request should be granted. *See People v Kasem,* 230 Mich 278; 203 NW135 (1925); *People v Chivas,* 322 Mich 384; 34 NW2d 22 (1948); *People v Walker,* 371 Mich 599; 124 NW2d 761 (1963). The trial court's reluctance to honor the jury request was based upon the length of time required and the possibility that undue emphasis will be accorded that portion repeated. This two-fold rationale was set forth in *United States v Rabb,* 453 F2d 1012 (CA 3, 1971). However, the Court considered it prejudicial error to *refuse* the jury request that crucial testimony be repeated. The danger of placing undue emphasis upon selected portions of repeated testimony was evidenced in *Henry v United States,* 204 F2d 817 (CA 6, 1953). There, reversible error occurred where the trial court permitted testimony to be repeated for the jury which included comments by the judge clearly expressing his opinion that the witness was swearing falsely.

persuade us that no miscarriage of justice occurred where the verdict was arrived at without repeating testimony once heard.

*People v Heard, supra,* apparently identically grounded upon judicial misconception of the law, is distinguishable. There, the trial court categorically refused to grant defense counsel's request that the jury be permitted to ask questions of the witnesses on the basis that such procedure in a criminal trial was unknown to him. However, a difference exists between affording the jury the opportunity of interrogating witnesses to elicit testimony not given previously and having repeated for the jury that testimony which has already been heard. Even if the request sought to clarify matter already testified to, the judge made clear his own view that the limited number of witnesses and the shortness of the trial did not warrant specific testimony being repeated for the jury. Moreover, objection was raised immediately in *Heard,* where no such objection was made in the instant case. It is well established, and the Court of Appeals properly held that, absent objection below, appellate courts will not consider issues raised for the first time on appeal unless manifest injustice results.[3]

We are not prepared to accept categorically defendant's interpretation of *Klein, supra,* appearing in *People v Wright, supra.* There, no abuse of discretion occurred when, in response to a jury request that certain testimony be repeated for

[3] MCLA 769.26; MSA 28.1096 states: "No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

them, the trial court directed the jury to deliberate further, yet did not rule out the possibility of having testimony read for them at a later time. Defendant suggests that communication of this possibility to the jury prevents reversible error while failure to do so mandates reversal. With such an inflexible interpretation we disagree.

The preferable view begins with the premise that the decision to comply with a request that selected portions of testimony be repeated for the jury remains solely within the discretion of the trial judge. Where, as here, the court denies such request appellate courts must review the record to determine the context in which the refusal was made, noticing any expression or intimation by the trial court regarding the reasonableness of the request. Where further review of the record discloses no confusion or ambiguity and none is evinced by the jury, it is not prejudicial error for the trial court to refuse a jury request that testimony be repeated. While conceding to the jury that their request may subsequently be granted in the event further deliberations prove fruitless may be appropriate in some circumstances, the failure to do so does not automatically result in reversible error where a review of the record substantiates the trial court's refusal to grant the jury request.

The circumstances in this case do not warrant a finding of prejudicial error.

Affirmed.

M. S. COLEMAN, J., concurred with J. W. FITZGERALD, J.