## METCALF v WATERBURY

1. APPEAL AND ERROR—PRESERVING QUESTION—OBJECTION—EVI-
   DENCE.

   A claim that a criminal record of a third-party was erroneously
   admitted into evidence in a negligence case was not preserved
   for appellate review where the court specifically asked plain-
   tiffs' counsel if he had any objection to the admission of the
   exhibit, and counsel replied, "No objection".

2. JURY—EXAMINING EXHIBITS—COURTS—JUDICIAL DISCRETION—EVI-
   DENCE.

   A trial court did not abuse its discretion in allowing a jury to
   take an exhibit into the jury room where counsel failed to
   object; the exhibit had been introduced into evidence, and the
   jury was fully apprised of its contents at the trial.

3. JURY—READING TESTIMONY—JURY REQUESTS—COURTS—DISCRE-
   TION.

   Allowing a jury to hear a reading of the testimony of a particular
   witness is within a trial court's sound discretion and a trial
   court must exercise its discretion to assure fairness and to
   refuse unreasonable requests of the jury, but a court cannot
   refuse to grant the jury's request simply for fear of placing too
   much emphasis on the testimony of one or two witnesses.

4. JURY—READING TESTIMONY—JURY REQUESTS—HARMLESS ERROR.

   Denial of a jury's request for a reading of a witness's testimony,
   even if error, was harmless where other witnesses testified as to
   the events in question, and omission of the reading was not
   prejudicial to the plaintiff in the context of the record as a
   whole even though the jury returned a verdict in favor of the
   defendant.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 5 Am Jur 2d, Appeal and Error § 545.
[2] 75 Am Jur 2d, Trial §§ 1032–1035.
[3, 4] 76 Am Jur 2d, Trial § 1043.
  Right to have reporter's notes read to jury. 50 ALR2d 176.
[6] 57 Am Jur 2d, Negligence §§ 198, 205, 216, 217.

5. APPEAL AND ERROR—INSTRUCTIONS TO JURY—PRESERVING QUES-
  TION.
    Appellate review of jury instructions is precluded in the absence
    of both a specific request for an instruction and a specific
    objection to the failure of the trial court to so instruct.

6. NEGLIGENCE—JURY QUESTION—INTENTIONAL TORT—CRIMINAL ACT
  —SUPERSEDING CAUSE— INTERVENING CAUSE.
    The question of whether an intentional tort or criminal act by a
    third party is a superseding or intervening cause which excuses
    a defendant's negligence is one for jury decision; an intentional
    tort or a criminal act may become a superseding cause but the
    primary actor may still be held responsible if he realized or
    should have realized the likelihood that such a situation might
    be created.

Appeal from Washtenaw, Patrick J. Conlin, J.
Submitted Division 2 March 6, 1975, at Detroit.
(Docket No. 19243.) Decided April 24, 1975. Leave
to appeal denied, 394 Mich 821.

Complaint by Grant and Mary Metcalf, adminis-
trators of the estates of Kenneth N. Metcalf, de-
ceased, and Margaret D. Metcalf, deceased, against
Robert Frederick Waterbury for damages for
wrongful death arising out of an automobile colli-
sion. Judgment for defendant. Plaintiffs appeal by
leave granted. Affirmed.

*Smith, Poplar & Kalis,* for plaintiffs.

*Davidson, Gotshall, Kohl, Nelson, Secrest, War-
dle & Lynch,* for defendant.

Before: ALLEN, P. J., and McGREGOR and M. F.
CAVANAGH, JJ.

ALLEN, P. J. Plaintiffs Grant and Mary Metcalf,
the administrators of the estates of Kenneth and
Margaret Metcalf, brought this wrongful death
action in the Washtenaw County Circuit Court

seeking damages for the deaths of their decedents. MCLA 600.2922; MSA 27A.2922. The plaintiffs alleged that Kenneth and Margaret Metcalf were killed as the result of the negligence of defendant Robert Waterbury. The jury rendered a verdict of no cause of action and the plaintiffs' motion for a new trial was denied by Circuit Judge Patrick J. Conlin. We granted the plaintiff's application for leave to appeal from that denial.

The facts in this case are straightforward, undisputed, and somewhat unusual. On September 17, 1965, at approximately 11:32 p.m., defendant was proceeding in an easterly direction on I-94 in the vicinity of the Grove Street exit near Ypsilanti when his vehicle struck a vehicle owned and operated by one Kressbach, causing both automobiles to run off the right-hand side of the expressway. It was conceded at trial that this accident was caused by the negligence of defendant. Following the accident, defendant's vehicle came to rest south of the eastbound lane and up against a mile marker or telephone pole. A tow truck arrived at the scene and prepared to tow defendant's vehicle from the field back onto the highway.

Police officers also arrived at the scene of the accident, and at least one of the officers was stationed on or near the roadway signaling oncoming drivers with a flashlight to slow their speed.

At approximately 11:49 p.m., some 13 to 15 minutes after the initial accident, Kenneth and Margaret Metcalf were driving their Mustang in an eastbound direction on I-94. The Metcalfs reduced the speed of their vehicle at the direction of the police officers. While the Metcalf vehicle was traveling at a reduced rate of speed, another eastbound motorist, Elbert Turner, was traveling at a high rate of speed and violently collided with the

rear of the Metcalf vehicle, shoving it into a Buick automobile driven by one Rita Terreberry.

The collision of the Turner vehicle with the Metcalf vehicle resulted in the immediate death of Kenneth Metcalf and the subsequent death of Margaret Metcalf. Elbert Turner was charged with the crime of manslaughter in the second accident and subsequently pled guilty in the Washtenaw County Circuit Court to the charge.

Defendant Waterbury pled guilty to a charge of reckless driving in the first accident. MCLA 257.626; MSA 9.2326. Plaintiffs' suit against defendant was premised on the theory that the proximate cause of the second accident was a massive traffic tie-up which was a foreseeable consequence of the initial accident. In the opening statement made at trial on behalf of defendant, the negligence of defendant in having caused the initial accident was admitted.

The plaintiffs have raised four allegations of error in this appeal: (1) the admission into evidence by the trial court of the court record of Elbert Turner's criminal conviction for manslaughter; (2) the court's decision to allow the record of Turner's conviction to be taken by the jury into the jury room; (3) the court's refusal to allow the jury to read or listen to the record of testimony of Officer William Stenning; and (4) the refusal of the court to instruct the jury on the elements of reckless driving involving the defendant, while instructing the jury on the elements of manslaughter involving Elbert Turner.[1]

---

[1] Upon oral argument, this Court requested the parties to submit supplemental briefs as to the applicability of two cases recently decided by the Supreme Court and not included in the briefs originally filed. These cases were *Wheelock v Eyl,* 393 Mich 74; 223 NW2d 276 (1974), which directly bears on plaintiffs' first claim of error, and *People v Howe,* 392 Mich 670; 221 NW2d 350 (1974), which related to plaintiffs' third claim of error. Said supplemental briefs were submitted and have been considered by this Court.

Our review of the record has revealed that plaintiffs' first allegation of error has not been preserved for appellate review. At trial, defendant offered exhibit 1, the official court record of Turner's manslaughter conviction. Plaintiff objected, stating that he probably was going to have to argue this question and would need time to examine the records. The trial court adjourned the case until the beginning of the next day, and after denying defendant's motion for directed verdict, specifically asked plaintiffs' counsel if he had any objection to the admission of the Turner file. Plaintiffs' counsel replied, "No objection". Therefore, we do not consider the merits of plaintiffs' claim on this point. *People v Eroh,* 47 Mich App 669, 675; 209 NW2d 832 (1973). See also *Campbell v Charles J. Rogers Construction Co,* 58 Mich App 411; 228 NW2d 398 (1975).[2]

Plaintiffs' second claim is also without merit. Despite plaintiffs' assertion that counsel objected to the submission of exhibit 1 to the jury, our

---

[2] We are not unmindful of *Wheelock v Eyl, supra,* decided November 21, 1974, and in which then Justice (now Chief Justice) T. G. Kavanagh, writing for the majority, states, "We hold that a criminal conviction after trial, or plea, or payment of a fine is not admissible as substantive evidence of conduct at issue in a civil case arising out of *the same occurrence.*" 393 Mich at 79. (Emphasis added.) In a dissenting opinion, Justice Fitzgerald stated that the issue was governed by *Socony Vacuum Oil Co v Marvin,* 313 Mich 528; 21 NW2d 841 (1946), holding that evidence of payment of a traffic fine was admissible as substantive evidence of negligence in a civil action for injuries, which case had been specifically incorporated in GCR 1963, 607. Since the trial court's ruling in the appeal now before us was made prior to the change in the law made under the majority opinion in *Wheelock,* it is unnecessary for this Court to reach the issue of whether the rule of *Wheelock* extends to the situation encompassed in the present appeal. In *Wheelock,* A collided with B who paid a fine for a minor traffic violation. Subsequently A sued B in a civil action. In the instant case, A collided with B and some 13 to 15 minutes later, C collided with D. C pled guilty to the crime of manslaughter. D then sued A in a civil action. The precise issue which we do not reach is whether D's civil action versus A "aris[es] out of the same occurrence".

examination of the record has disclosed that plaintiff instead objected to the court's refusal to read Officer Stenning's testimony, but failed to object to submitting exhibit 1 to the jury. We are cognizant of the rule that it is within the trial court's discretion to grant or refuse a jury's request to examine an exhibit, and that this discretion is subject to appellate court review. *Bulen v Granger,* 63 Mich 311, 318; 29 NW 718 (1886). However, in light of counsel's failure to object, and in view of the fact that exhibit had been introduced into evidence and the jury was fully apprised of its contents, we find no abuse of the trial court's discretion in allowing exhibit 1 to be examined by the jury. *Hirdes v Selvig,* 369 Mich 173, 179–180; 119 NW2d 537 (1963).

After receiving the trial court's instructions, the jury was taken to lunch shortly before 12:45 p.m., on the last day of trial. At about 2 p.m., the jury returned to the courtroom, and requested an additional instruction on proximate cause, a reading of Officer William Stenning's testimony, and defense exhibit 1, the record of Turner's manslaughter conviction. Over plaintiffs' objection, the trial court refused to allow the jury to hear Stenning's testimony for the following reasons:

"(1) There is an objection from defense counsel and (2) that it may tend to place the testimony of Officer Stenning out of context and, therefore, there would be undue emphasis of that particular portion of the trial."

The jury was brought into the courtroom, and the trial court told them that he would not allow them to hear Officer Stenning's testimony. He said that the jury would have to rely upon its memory, stating:

"It is the opinion of this court that to give you that may place undue emphasis on that particular testimony and perhaps outweigh other equally competent testimony that you've heard, and I would rather have all the testimony be treated equally so, therefore, I will ask to have you to rely on your memory for Officer Stenning's statement."

In their briefs as first submitted, both parties refer to *Klein v Wagenheim,* 379 Mich 558; 153 NW2d 663 (1967), as the foundation case regarding the reading of testimony to the jury. *Klein* recognized the rule that it is within the trial court's sound discretion as to whether or not the jury will be allowed to hear the testimony of a particular witness, but also stated that it "is not now and never has been the law in Michigan" that the jury may not hear the testimony of a witness " 'for the simple reason that if you read some of it you tend to emphasize that over the other' ". 379 Mich 558, 561. *Klein* went on to find that although error was committed, it was not reversible on the grounds that the trial judge effectively advised the jury that the evidence could possibly be read at a later time by telling the jury to " 'try to work a little more and see if you can come up with something, and see what happens' ". 379 Mich 558, 561–562. This sort of a statement is absent from the instant situation.

The recent decision of *People v Howe,* 392 Mich 670, 675–676; 221 NW2d 350 (1974), covered by the parties in their supplemental briefs, referred to *Klein* and stated:

"A trial court must exercise its discretion to assure fairness and to refuse unreasonable requests; but, it cannot simply refuse to grant the jury's request for fear of placing too much emphasis on the testimony of one or two witnesses."

The trial judge in *Howe* was found to have abused his discretion by failing to indicate that he thought the jury's request was unreasonable and by failing to advise the jury that its request would be reviewed if the jury members, after resuming deliberation, continued to find it necessary to re-hear certain testimony. 392 Mich 670, 677. Relying on *Howe,* plaintiffs contend reversible error occur-red.

Although the question is admittedly close, we find the present case distinguishable from *Howe, supra.* That case involved the trial court's refusal to grant a jury's request for a reading of the testimony of the only two witnesses to the events preceding the victim's death by strangulation, a fact upon which the majority opinion strongly relied. 392 Mich at 677. In the instant case the jury's request was for a reading of the testimony of but one of several witnesses to the traffic condi-tions existing at and immediately preceding the second accident. Police Officer William Harrison, who accompanied Officer Stenning to the scene of the accident and who helped direct traffic in the interval between the two accidents, testified. So did Mildred and Carl Kressbach, occupants of the automobile struck by defendant in the first colli-sion. Neither were injured and each recounted the events occurring between the two accidents. A fifth witness was Rita Terreberry whose Buick passed Officer Stenning while he was directing traffic and seconds later was struck by the Mustang (Metcalf car) which had been violently hit from the rear by the station wagon driven by Turner. She testified that at the time, the tow truck was not blocking I-94 but was "way down" on the right-hand side. Because Officer Stenning's testimony consisted of 39 of some 143 pages of the record, one might

argue, as indeed appellant does argue, that despite the testimony of other witnesses, Stenning's version of the accident is vital to the jury's decisional process. After excluding those portions of Stenning's testimony occupied by questions as to Waterbury's intoxication, the subsequent criminal proceedings against Turner, and arguments in the jury's absence on admissibility of evidence, the relevant portion of testimony boils down to some 23 pages.

We also note that in *Howe, supra,* the Supreme Court, upon reading the excluded testimony and after taking into consideration the context of the entire record, concluded the error was not harmless. 392 Mich at 678. However, in the instant case, a reading of Stenning's testimony leads us to conclude that its omission was not prejudicial to plaintiff. Admittedly, some portions were supportive of plaintiff's basic theory that the first accident caused a traffic tie up which in turn was the proximate cause of the second accident.[3] But other portions negated this theory. He stated that the night was clear and visibility good; that as he stood in the eastbound lane of I-94 waving his flashlight to flag cars down, all cars except the station wagon driven by Turner immediately slowed so as to be moving slowly or almost stopped some 217 paces east where the Waterbury vehicle lay on the right shoulder of the road; that at this point:

---

[3] "*Q.* But at that point the highway was beginning to be blocked. Is that right? Or how would you describe it?

"*A.* At the point when the flash light was moved back and forth and pumped up and down, cars were stopping at this point, and this is where—if you call it blockage—this is where you have traffic going from seventy miles an hour down to zero, in the vicinity of zero speed.

\* \* \*

"*Q.* The situation you saw building was the danger of another accident. Is that correct?

"*A.* Correct."

"I am standing on the center line to see both lanes, and a loud noise like a racing car could be heard from the west, and a car was coming at a high rate of speed. I looked ahead and could see there was to be some problem. I hollered and yelled and used a flashlight to make this fellow slow down. He met me at a terrific rate of speed and I jumped to the left, and I hollered and I know my partner moved because they would have been hit. The car went past me. I estimated the speed at eighty miles an hour. He continued past at a high rate and in the same lane as the Mustang, and I watched it happen. I watched him hit the back of the Mustang, and it appeared as if it flew in the air somewhat. The Buick was struck and spun and ended in a westerly direction."

Upon cross-examination the witness made the following statement which clearly was prejudicial to plaintiffs' claim:

"*Q.* At the time of this second accident, to your knowledge, was there any obstruction on the highway, anything prohibiting the traffic from flowing?

"*A.* No, the only thing that suddenly was in the roadway was the Terreberry car and the Metcalf car, plus the officer, of course, flagging down the traffic. That's the only obstruction, if you call that an obstruction, that was there.

"*Q.* Prior to that second accident happening, there was no obstruction on the highway, was there?

"*A.* No, traffic was flowing normal."

Looking at the record as a whole and considering the fact that other witnesses testified as to the events in question, we conclude that the trial court did not commit error in denying the jury's request for a reading of the testimony and further, assuming arguendo that error did occur, that such error was harmless. See generally, *Ilins v Burns,* 388 Mich 504, 510; 201 NW2d 624 (1972). Even under

*Howe, supra,* the trial judge is still not mandated to grant every request of the jury for a reading of portions of the record.

Regarding the fourth and last claim of error, our examination of the record fails to reveal a written request that the trial court instruct the jury on the elements of reckless driving. Although plaintiffs' counsel objected to the trial court's failure to instruct on reckless driving, stating, "We requested another instruction which the court did not give and that was an instruction on the definition of reckless driving * * * ", our review of the record does not support that contention. Generally, appellate review is precluded in the absence of both a specific written request for an instruction and a specific objection to the failure of the trial court to so instruct. *Hunt v Deming,* 375 Mich 581, 584–585; 134 NW2d 662 (1965). GCR 1963, 516.1 and .2. Without resorting to such technical grounds for finding no error, we conclude that for substantive reasons the trial court properly rejected the instruction requested. Plaintiffs' basic claim was that defendant's negligence was the proximate cause of the instant accident. In turn, defendant alleged that Turner's act was so extraordinary that it could not be considered foreseeable, and therefore in light of the principles recited in 2 Restatement Torts 2d, §§ 447(c)–448, pp 478–482, defendant would be relieved of responsibility. Under these principles it does not matter *how* the original actor was negligent. What matters is whether the negligent act, be it driving under the influence or a minor traffic violation, led to a foreseeable chain of events resulting in the injury complained of. An intentional tort or criminal act may become a "superseding cause", but the primary actor (such as defendant herein) may still be

held responsible if he "realized or should have realized the likelihood that such a situation might be created". Restatement, *supra,* § 448, p 480.

In *Price v Manistique Schools,* 54 Mich App 127, 132–134; 220 NW2d 325 (1974), this Court set forth the general rules regarding superseding or intervening cause and concluded that generally the question was one for jury decision. In the instant case the conflicting claims were fully submitted to the jury who heard a number of witnesses testify on the full facts involved. The jury found in favor of defendant and we decline to reverse.

Affirmed, costs to defendant.