# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 3, 2015

Plaintiff-Appellee,

v

No. 317804
Wayne Circuit Court
LC No. 12-001386-FC

NASIR LAMONT BANKS,

Defendant-Appellant.

Before: MURRAY, P.J., and SAAD and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of multiple criminal offenses, including murder. For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The prosecution charged defendant with the murders of two people at a drug house in Detroit. At trial,[1] witness S.J., one of the drug dealers who used the house to sell drugs, testified that he awoke at the house on the morning of November 30, 2011 to the sound of gunfire, and found that he had suffered three gunshot wounds. He fled to an upstairs bathroom, and heard more gunshots. After a few minutes, S.J. attempted to go downstairs, and saw defendant near the bottom of the steps holding a shotgun and a bag of marijuana that the drug dealers kept in the house. S.J. retreated to the attic until the police arrived. As officers assisted him downstairs, the witness saw the two victims bloodied and lying on the floor.[2]

After a hospital stay, S.J. offered a statement on the shooting, in which he described defendant as the shooter. He subsequently identified defendant as the shooter in a photographic lineup. S.J.'s identification of defendant as the murderer was supported by testimony from a

---

[1] This appeal is from defendant's retrial—the jury in his initial trial could not reach a verdict. The evidentiary portion of defendant's first trial occurred in November and December of 2012; the evidentiary portion of defendant's retrial occurred in July 2013.

[2] S.J. also testified that defendant's brother shot him in April 2012, in apparent retaliation for his cooperation with the authorities. We discuss this episode in greater detail later in the opinion.

-1-

frequent customer of the drug house, who saw a man who resembled defendant leaving the house with a shotgun on the morning of the shooting.[3] The customer also gave a statement and description to the police, and identified defendant as the man he saw from a photographic lineup.

The jury convicted defendant of first degree felony murder under MCL 750.316(1)(b), second degree murder under MCL 750.317, assault with intent to commit murder under MCL 750.83, felon in possession of a firearm under MCL 750.224f, and possession of a firearm during the commission of a felony under MCL 750.227b.

On appeal, defendant argues that the trial court denied him a fair trial when it: (1) denied defendant's motion for an extended adjournment[4]; (2) allowed introduction of in-court identifications supposedly tainted by "suggestive" photographic lineups; (3) permitted testimony on a retaliatory shooting allegedly committed by defendant's brother; and (4) issued a jury instruction on aiding and abetting.[5] Defendant also claims that his conviction for second degree murder must be vacated because it violates the prohibition against double jeopardy.

## II.  ANALYSIS

### A.  ADJOURNMENT REQUEST

#### 1.  WAIVER

A preserved challenge to a trial court's decision on whether to grant an adjournment is reviewed for an abuse of discretion. *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665

---

[3] The customer, A.B., testified that he was driving his car past the drug house the morning of the murders, because he intended to go inside to buy drugs.

[4] Defendant also asserts that the trial court's action is linked to ineffective assistance from his attorney—namely, that his attorney did not have adequate time to prepare for his case.

[5] Defendant also makes a frivolous argument that involves the provision of transcripts of witness testimony to the jury. The jury made a reasonable request to rehear S.J.'s testimony. *People v Howe*, 392 Mich 670, 677; 221 NW2d 350 (1974). Contrary to defendant's argument, the trial court repeatedly advised the jury of its intent to supply the entirety of S.J.'s testimony as soon as it could, part in writing and part by read back. The trial court also ensured fairness to the defense by urging the jury to review *both* the transcribed portion of S.J.'s testimony and the portion to be later read back. The trial court acted within the discretion vested by MCR 2.513(P) when it repeatedly informed the jury of its intent to provide the entirety of S.J.'s trial testimony and instructed the jury to consider the entire testimony. *People v Carter*, 462 Mich 206, 218; 612 NW2d 144 (2000). Defendant's citation of federal case law, which supposedly cautions against reading back only a portion of trial testimony, ignores the Michigan Supreme Court's repeated rejections of any basis for concern in following this procedure. *Howe*, 392 Mich at 675-676; *Klein v Wagenheim*, 379 Mich 558, 561; 153 NW2d 663 (1967).

(2002).[6]  A defendant waives his ability to challenge the length of an adjournment "when defense counsel clearly expresses satisfaction with the trial court's decision" on the adjournment. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (internal quotations and citation omitted) (explaining that waiver occurs when a party intentionally relinquishes or abandons a known right, and a party "who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error").

Here, defendant's attorney requested an adjournment to read trial transcripts and depositions from defendant's first trial.  The trial court granted an adjournment of one day to give defense counsel an opportunity to adequately review the record, and specifically asked the attorney whether he would be "completely prepared" to "go forward with the trial," to which the attorney responded "by tomorrow, I will be prepared your Honor."  Because "defense counsel clearly expresse[d] satisfaction with [the] trial court's decision [on the adjournment], counsel's action will be deemed to constitute a waiver," and defendant is barred from raising any claim related to the trial court's one day adjournment of the trial. *Kowalski*, 489 Mich at 503.[7]

Despite the fact that defendant has waived his argument that the trial court abused its discretion on his request for adjournment, he links this argument with a claim for ineffective assistance of counsel—namely, because his retrial attorney did not make effective use of the record from his first trial, the retrial attorney gave him ineffective assistance.[8]

## 2.  INEFFECTIVE ASSISTANCE OF COUNSEL

Because defendant did not seek a new trial or an evidentiary hearing on the basis of any alleged ineffective assistance of counsel, our review is limited to "errors apparent on the record." *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012).  Whether a defendant has received the effective assistance of counsel comprises a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *Lockett*, 295 Mich App at 186.

"In *Strickland v Washington*, the Supreme Court of the United States stated that in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish

---

[6] The Michigan Supreme Court has noted that the terms "adjournment" and "continuance" are used interchangeably to describe the process of adjourning a trial. *Jackson*, 467 Mich at 276 n 5.

[7] The section addressing the adjournment in defendant's brief on appeal distorts the record on occasion.  For instance, defendant states that his defense counsel had not had time to review "*eight volumes* of transcript from the previous trial," when in fact defendant's attorney received 300 pages of transcript and deposition testimony (emphasis original).

[8] As we explain infra, defense counsel's performance at retrial actually demonstrates an extensive familiarity with the record of the original trial, and further belies defendant's claims that the trial court abused its discretion in refusing to grant a new attorney and/or longer adjournment.

that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).[9] Effective assistance of counsel is "strongly presumed, and the reviewing court should not evaluate an attorney's decision with the benefit of hindsight." *People v McMullan*, 284 Mich App 149, 155; 771 NW2d 810 (2009). Furthermore, defense counsel possesses "wide discretion in matters of trial strategy." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

Here, as noted, defendant asserts that his attorney gave him ineffective assistance because the attorney supposedly did not use inconsistent testimony from the first trial to impeach two witnesses, S.J. and A.B., at retrial. Though defendant raises multiple instances of alleged ineffective assistance, all of his allegations lack merit, and only one deserves extended discussion.[10]

Defendant says that his attorney should have made use of S.J.'s testimony from the first trial, which stated that S.J. did not immediately name defendant as the shooter when the police arrived at the scene. But it is unlikely defendant's attorney needed to draw any distinction between S.J.'s testimony on this subject at the first trial and S.J.'s testimony during the retrial, because his retrial testimony on the matter was similar to his original testimony. In any event, defendant's lawyer spent almost the entirety of his closing argument questioning the accuracy and veracity of S.J.'s testimony. And defense counsel specifically emphasized that some of the

---

[9] To demonstrate that his lawyer's performance fell below an objective standard of reasonableness, a defendant must show that "the identified acts or omissions were outside the wide range of professionally competent assistance." *Vaughn*, 491 Mich at 670.

[10] Defendant's other claims for ineffective assistance are belied by the record. Defendant says defense counsel failed to impeach S.J.'s retrial testimony that he did not hear gunshots while in the attic, with S.J.'s testimony at preliminary examination testimony that he heard gunshots while in the attic—when in fact counsel impeached S.J.'s retrial testimony for this reason. The same is true of defendant's claim that counsel failed to impeach S.J.'s retrial testimony that the shots he heard while in the bathroom were from a high-caliber weapon, with S.J.'s preliminary examination testimony that the shots while in the bathroom were from a handgun. Again, defendant's retrial attorney impeached S.J.'s retrial testimony for this reason. Likewise, defendant's claim that counsel should have impeached S.J.'s retrial testimony on defendant's appearance ignores the fact that counsel highlighted inconsistencies in S.J.'s testimony on defendant's appearance. And despite defendant's claims that counsel did not use S.J.'s original trial testimony on his marijuana use to impeach his retrial testimony on the same, defense counsel actually did impeach S.J. on this topic.

In addition, defendant's assertion that counsel did not impeach A.B.'s retrial testimony on the appearance of the shooter, with a portion of A.B.'s testimony from the original trial that described the shooter as looking similar to S.J., ignores the fact that counsel questioned A.B. on this subject.

police officers who responded to the scene documented only S.J.'s statement that an unknown black male had shot at him. In sum, the record belies defendant's extensive claims of ineffective assistance, and he has failed to establish that counsel deprived him "of a substantial defense." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

## B. PHOTOGRAPHIC LINEUPS

A trial court's decision on whether to suppress identification evidence is reviewed for clear error. *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that" the trial court made a mistake. *Id*. "Issues of law relevant to a motion to suppress are reviewed de novo." *Id*.

"A photographic identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (footnote omitted). A court reviewing whether a lineup is impermissibly suggestive may consider the following:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. [*People v Kurylczyk*, 443 Mich 289, 306; 505 NW2d 528 (1993) (opinion by GRIFFIN, J.).]

If an identification procedure is "impermissibly suggestive," the reviewing court then must determine "whether the victim had an independent basis to identify the defendant in court." *Gray*, 457 Mich at 114–115. The defendant bears the burden of establishing that a lineup was unconstitutional. *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001).

Here, defendant unconvincingly argues that the police gave S.J. and A.B. impermissibly suggestive pretrial photographic lineups, and that the trial court erred when it refused to suppress their identification testimony.[11] Both S.J. and A.B. identified defendant in photographic lineups that were not "impermissibly suggestive."

---

[11] Defendant also argues that the prosecution did not establish that either S.J. or A.B. possessed an independent basis for identifying defendant in court. This inquiry is irrelevant, however, because the pretrial photographic lineups given to both S.J. and A.B. were not impermissibly suggestive. See *Gray*, 457 Mich at 114–115; and *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995) ("[t]he need to establish an independent basis for an in-court identification arises where the pretrial identification is tainted by improper procedure or is unduly suggestive").

In any event, were we to assume that the photographic lineups were impermissibly suggestive, both S.J. and A.B. had independent bases to identify defendant. Defendant concedes that he and S.J. knew one another, and S.J. testified that he had an unobstructed view of defendant when he

S.J. viewed the photographic lineup on December 12, 2011, less than two weeks after the shootings. Both S.J. and a police officer testified that S.J. was mentally alert during the viewing, and that S.J. immediately identified defendant as the shooter with certainty. S.J. denied that the police suggested which photograph he should select. Instead, S.J. stated that he immediately selected defendant as the assailant because he had encountered defendant on at least 25 occasions before the shooting, and that he had an unobstructed view of defendant when he attempted to escape the shooting down the stairway. And, though S.J. recalled that, when presenting the photo array, a police officer asked him which man shot him, "the fact a victim is told the attacker is in the lineup does not alone render a lineup unduly suggestive." *People v Sawyer*, 222 Mich App 1, 3; 564 NW2d 62 (1997).

A.B. viewed a photographic lineup two weeks after the shooting. Both A.B. and a police officer testified that a police officer asked A.B. whether he recognized anyone on the array from the drug house, and that A.B., without coercion or suggestion, selected the photograph of defendant as the man he saw holding a shotgun outside the house the morning of the shooting. A.B. and the officer's testimony differed only in that the officer estimated A.B. selected defendant's photograph in approximately five seconds, while A.B. did not recall the precise amount of time it took for him to make the selection. Again, A.B. testified that on the morning of the shooting, while he was driving past the drug house, he saw a man, who wore nothing to conceal his head, leaving the house with a shotgun.

As such, there is nothing in the record that indicates that the photographic lineup was so "impermissibly suggestive" that it violated defendant's constitutional rights.[12] Accordingly, the trial court properly rejected defendant's attempt to suppress the identification evidence.

## C. OTHER ACTS EVIDENCE

### 1. LEGAL STANDARDS

---

attempted to flee the shooting. A.B. testified that he saw a man who looked liked defendant leaving the drug house with a shotgun immediately after the shooting.

[12] Defendant also makes two unavailing arguments related to the appearance of the people in the photographs. His claim that his lineup photograph includes a clearly visible teardrop tattoo near his eye is belied by the photograph—we are not able to discern a tattoo or anything else unfairly suggestive about the photograph array, and nothing in the evidentiary hearing indicates that such a tattoo was apparent to S.J. and A.B. when they made the identification. And, in any event, "[p]hyiscal differences generally relate only to the weight of an identification and not to its admissibility." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002); and *McDade*, 301 Mich App at 357.

Defendant also says that the lineup was suggestive because S.J. and A.B. identified him as having either an afro or braids, and facial hair, but the lineup did not contain photographs with individuals that had afros or braids, or facial hair. However, defendant fails to explain how these differences in appearance would result in a substantial likelihood of misidentification, "as opposed to merely constituting 'noticeable' differences." *McDade*, 301 Mich App at 358.

Preliminary legal issues "regarding [evidence] admissibility based on construction of a constitutional provision, rule of evidence, court rule, or statute" are reviewed de novo. *People v Jambor (On Remand)*, 273 Mich App 477, 481; 729 NW2d 569 (2007). A trial court's ruling whether to admit evidence is reviewed for an abuse of discretion. *Id*. "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (internal quotation and citation omitted).

MRE 404(b)(1)[13] prohibits the admission of evidence of a defendant's other acts or crimes if it is introduced solely for the purpose of showing that defendant's action conformed with his criminal character. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). Evidence of a defendant's other acts or crimes is admissible when: (1) "the prosecutor . . . offer[s] the 'prior bad acts' evidence under something other than a character or propensity theory"; (2) the other acts evidence is relevant under MRE 402; (3) the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice under MRE 403. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). On request, the trial court may provide a limiting instruction that describes the proper consideration of other acts evidence. *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998).

Evidence "other than a character or propensity theory" includes evidence that shows a defendant's "scheme, plan, or system." MRE 404(b)(1). Relevant evidence is evidence that "make[s] a material fact at issue more probable or less probable than it would be without the evidence." *People v Crawford,* 458 Mich 376, 387; 582 NW2d 785 (1998).

Relevant evidence can be excluded if it "its probative value is substantially outweighed by the danger of unfair prejudice. . ." MRE 403. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Evidence is not unfairly prejudicial simply because it "damage[s] . . . the [defendant's] cause." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). When it balances the probative force of evidence against its prejudicial effect, a court may look to

> the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved

---

[13] MRE 404(b)(1) states that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

in another matter without as many harmful collateral effects.  [*Blackston*, 481 Mich at 462.]

"Rule 403 determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony by the trial judge." *Id*. (internal quotation marks omitted).

## 2. FACTUAL BACKGROUND

In defendant's retrial, S.J. testified that he identified defendant as the shooter at a February 2012 preliminary examination, and that he saw defendant and his brother, Rahman Banks, in court during other preliminary examination hearings.  The prosecutor also played a recorded January 2012 telephone conversation[14] between Rahman and defendant for the jury, in which the brothers cryptically discuss exchanging "information" on an unidentified person.  The conversation indicated that Rahman was monitoring someone—he told defendant "I been sittin' there for a minute and I ain't seen him," and that Rahman "got connections."

S.J. testified that in April 2012, he was walking along Gratiot Avenue during the day, when Rahman emerged from a stopped truck, drew a handgun, stated "What's up now?"—which S.J. understood to mean retaliation—and shot S.J. five or six times.[15]  The Wayne County Sherriff's deputy testified that Rahman visited defendant in jail three days before this shooting occurred.

Over defendant's objection at his initial trial, the court held that the Rahman-related testimony and phone conversation were admissible under MRE 404(b), and that they were not unfairly prejudicial under MRE 403.  It reasoned that the record supported a reasonable determination that defendant participated in planning S.J.'s second shooting.  Defendant's attorney again objected to the evidence at retrial, but the trial court again admitted the evidence, and made reference to its earlier ruling on the matter.

Defendant makes two linked arguments on appeal to claim that the trial court abused its discretion when it admitted the testimony on the above evidence.  He says that the testimony on Rahman's attack on S.J., the April 2012 jail visit, and the phone recording were used as "other acts" evidence for improper purposes that violated MRE 404(b).  In the alternative, defendant argues that the probative value of this evidence was substantially outweighed by its unfairly

---

[14] Defendant made the phone call from the Wayne County Jail, and a sheriff's deputy testified that the phone call was recorded, as are all phone calls from the jail.

[15] S.J. testified that he identified Rahman Banks as his April 2012 assailant to the police and at Rahman's trial.  After a bench trial in the Wayne Circuit, the court convicted Rahman of multiple crimes, including witness intimidation and retaliation against a witness.  Another panel of our Court affirmed most of the trial court's ruling.  See *People v Rahman Banks*, unpublished opinion per curiam of the Court of Appeals, issued June 17, 2014 (Docket No. 313887), slip op at 5–9.  Application for leave to the Michigan Supreme Court remains pending.

prejudicial effect, and thus should have been barred under MRE 403. Neither argument is convincing, and we address each in turn.

## 3. APPLICATION

### 3A. MRE 404(B)(1)

Defendant's specific assertions regarding MRE 404(b)(1)—namely, that the prosecutor failed to establish defendant's involvement in the April 2012 shooting, and that the trial court improperly allowed the jury to draw its own conclusions on this matter—are flawed because they are largely unrelated to the types of evidence that MRE 404(b)(1) is intended to prohibit. As noted, MRE 404(b)(1) is intended to prevent evidence used to show that defendant acted in conformance with his criminal character. But defendant does not argue in these terms. Instead, he states that the evidence failed to connect him to the April 2012 shooting—an issue which is not relevant to a MRE 404(b)(1) determination.[16]

In any event, defendant's arguments, such as they are, are wrong. This is true whether they are analyzed under MRE 404(b)(1) or simple common sense. The phone conversation,[17] jail visit, and testimony on Rahman's attack *do* connect defendant to the second shooting of S.J. Together, they give rise to the reasonable inference that defendant asked Rahman to kill S.J., the main witness against him, before S.J.'s further testimony at the preliminary examination and before the hearing date originally scheduled to suppress S.J.'s identification testimony.

Accordingly, the evidence was relevant to defendant's case—it tended to demonstrate that S.J. correctly identified defendant as the November 2011 shooter who committed two murders.[18] It possessed even more relevance because defendant's trial strategy involved

---

[16] Defendant's complaint that the trial court delegated to the jury the court's responsibility to determine whether the prosecutor had provided sufficient foundational evidence "to support a finding by the jury that the defendant committed the other act," is without merit. *People v Vandervliet*, 444 Mich 52, 92; 508 NW2d 114 (1993) (opinion of LEVIN, J.), amended 445 Mich 1205 (1994). Defendant did not raise this claim in the trial court and mischaracterizes the record. The record reveals that the trial court implicitly found that the prosecutor had presented sufficient foundational evidence.

[17] Nor is the phone conversation is hearsay—it was not offered to prove that Rahman "got connections" or whether he was "sittin' there for a minute and . . . ain't seen him." Instead it was offered to show that S.J. credibly identified defendant as the gunman who shot him and murdered two others in November 2011. See MRE 801.

[18] See *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996) (affirming the trial court's admission of the defendant's threat against a victim independent of MRE 404(b) because "[a] defendant's threat against a witness is generally admissible" as "conduct that can demonstrate consciousness of guilt").

discrediting the veracity of S.J.'s testimony. The prosecution explicitly used the evidence for these purposes—it did not use the evidence to show that defendant was a bad person who committed the November 2011 murders in conformity with his bad character. Because the prosecution did not use the phone conversation, jail visit, and testimony on Rahman's attack in this way, defendant's MRE 404(b)(1) argument is inapposite and irrelevant to the determination of this case.[19]

As such, although the trial court erroneously admitted the above evidence under MRE 404(b), the court reached the correct result and properly admitted the evidence. *People v Powell*, 303 Mich App 271, 279 n 1; 842 NW2d 538 (2013).

## 3B. MRE 403

Defendant's argument that the trial court erred when it refused to bar the jail visit, phone recording, and Rahman-related testimony under MRE 403 is equally unavailing. None of the evidence required much time to present or caused any likelihood of delaying the trial, nor was it cumulative. It tended to show defendant's consciousness of guilt in the November 2011 shooting and enhanced the credibility of S.J.'s identification of defendant as the shooter, both matters in dispute. There is no potential that the evidence on Rahman's April 2012 attack on S.J. might have confused or misled the jury as to the crimes for which defendant had been charged— the November 2011 drug house shooting. And there is no indication that the prosecutor could have bolstered S.J.'s credibility on the November 2011 shooting by presenting other evidence that would not have had "as many harmful collateral effects." *Blackston*, 481 Mich at 462.

Accordingly, the trial court properly held that MRE 403 did not require exclusion of evidence on the jail visit, phone recording, or testimony on Rahman's April 2012 shooting of S.J.

## D. AIDING AND ABETTING JURY INSTRUCTION

Claims of instructional error are reviewed de novo. *People v Bartlett*, 231 Mich App 139, 143; 585 NW2d 341 (1998). Jury instructions must include all elements of the charged offenses, and must not omit material issues, defenses, and theories that the evidence supports. *Id*. Jury instructions do not qualify as erroneous if they fairly present to the jury the issues to be tried and sufficiently protect the defendant's rights. *People v Knapp*, 244 Mich App 361, 376; 624 NW2d 227 (2001). An appellate court confines its review of unpreserved instructional challenges to a determination of whether plain error affected the defendant's substantial rights. *Kowalski*, 489 Mich at 505–506.

---

See also *People v Spillman*, 399 Mich 313, 320; 249 NW2d 73 (1976) (admitting evidence of the defendant's crime against the same victim because it "tends to make this witness' identification of defendant more credible").

[19] Moreover, the trial court instructed the jury that it should not consider evidence on Rahman's April 2012 shooting of S.J. as proof that defendant "is a bad person or . . . is likely to commit crimes." See *Blackston*, 481 Mich at 462.

Defendant argues that the trial court erred when it issued an aiding and abetting jury instruction, and asserts that the instruction denied him a fair trial. But defense counsel waived appellate review of any instructional issues. Before the trial court read the jury the final instructions, the prosecutor stated that she had given the court a copy of the requested instructions, and defense counsel responded, "I have had a chance to look at them. I have no objections." In so doing, defendant waived his right to challenge instructional issues on appeal.[20]

In the alternative, defendant says his counsel provided him ineffective assistance by failing to challenge the aiding and abetting instruction.[21] "To place the issue of aiding and abetting before a trier of fact, the evidence need only tend to establish that more than one person committed the crime, and that the role of a defendant charged as an aider and abettor amounts to something less than the direct commission of the offense." *People v Vaughn*, 186 Mich App 376, 382; 465 NW2d 365 (1990).

The trial court did not explain the evidentiary basis that warranted the aiding and abetting instruction during the retrial, presumably because defense counsel said he had no instructional objections. Nor did the prosecutor offer evidence that anyone else participated in the charged crimes, and no evidence gave rise to a reasonable inference that any other individual participated as a potential guilty principal. *Vaughn*, 186 Mich App at 382. Accordingly, the trial court should not have issued the instruction on aiding and abetting.

The trial court's error, however, was harmless. Ample, properly admitted evidence established defendant's guilt, including the eyewitness identification testimony by S.J. and A.B. And, dispositive in the context of a claim for ineffective assistance of counsel, defendant is unable to show that the outcome of his trial "would have been different" had his counsel objected to the aiding and abetting instruction. *Vaughn*, 491 Mich at 669.

## E. DOUBLE JEOPARDY[22]

If a jury convicts a defendant of both second degree murder and first degree felony murder, and both convictions arose from the same victim's killing, the constitutional prohibition against double jeopardy is violated. *People v Clark*, 243 Mich App 424, 429; 622 NW2d 344

---

[20] See *Kowalski*, 489 Mich at 504–505 n 28 (approvingly citing multiple Court of Appeals decisions holding that an attorney's statement, "I have no objections," embodied "express and unequivocal indications that he approved of the instructions," and affirmatively waived and extinguished claims of appellate error).

[21] See section A2, supra, for a discussion on the relevant legal standards for evaluating a claim for ineffective assistance of counsel.

[22] Because defendant failed to raise a double jeopardy claim before the trial court, the issue is unpreserved, and we review the matter only to ascertain whether any plain error "affected the defendant's substantial rights, that is, the error affected the outcome of the lower court proceedings." *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008).

(2000). In such a situation, the judgment can be remedied by vacating one of the sentences and retaining the other. *Id*.

Here, the jury convicted defendant of four counts of murder for the killings of two victims: first degree felony murder and second degree murder for the killing of one victim, and first degree felony murder and second degree murder for the killing of the other. At the sentencing hearing, the trial court acknowledged that the jury had returned four murder convictions for the killing of two victims, recognized that "a Defendant cannot be sentenced on two different types of murder," and vacated the "second degree murder counts." Defendant provides no authority that instructs a trial court to use any other particular language to effectively vacate a conviction and sentence, and his argument that the trial court did not effectively vacate his sentences for second degree murder has no merit whatsoever.[23]

Affirmed.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Kirsten Frank Kelly

---

[23] The Michigan Department of Corrections' Offender Tracking Information System website for defendant lists only his two first degree felony murder convictions as active sentences.