*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL GREEN,

        Defendant-Appellant.

UNPUBLISHED
December 23, 2025
11:50 AM

No. 367951
Wayne Circuit Court
LC No. 19-007230-01-FC

Before: GARRETT, P.J., and PATEL and YATES, JJ.

PER CURIAM.

In February 2020, a jury convicted defendant of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (sexual penetration of a victim less than 13 years old by an individual at least 17 years old), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (sexual contact of a victim less than 13 years old by an individual at least 17 years old). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 25 to 40 years for each count of CSC-I and 15 to 25 years for each count of CSC-II. The trial court granted defendant's motion for new trial. The prosecution appealed by delayed leave granted,[1] and we reversed. *People v Green*, unpublished per curiam opinion of the Court of Appeals, issued June 30, 2022 (Docket No. 357640) (*Green I*). On remand, the trial court denied defendant's renewed motion for new trial on the issues previously raised but not addressed by the trial court. Defendant now appeals by right the trial court's amended judgment of sentence.[2] Finding no errors warranting reversal, we affirm.

---

[1] *People v Green*, unpublished order of the Court of Appeals, entered August 10, 2021 (Docket No. 357640).

[2] The initial judgment of sentence erroneously reflected convictions for three counts of CSC-I and one count of CSC-II, with life sentences for all counts. On remand, the trial court entered an amended judgment of sentence to correct the error.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant's convictions arise from his conduct in 2017 involving AO, the eleven-year-old daughter of his then-girlfriend, VO. Defendant and VO began dating in 2011. In 2012, defendant moved in with VO and her three children. The couple argued often and the police were called frequently. In approximately 2013, the couple broke up and defendant moved out. They rekindled their relationship in 2014, and defendant moved back in. In November 2017, the couple got into a verbal argument that allegedly became physical. The couple broke up that day and defendant left the household. Three days later, AO disclosed to her mother that defendant had sexually assaulted her. VO immediately took AO to the hospital and reported the matter to the police.

At the time that defendant allegedly assaulted AO, he was on parole for operating while intoxicated—third offense, MCL 257.625(1), and felonious assault, MCL 750.82. The new criminal activity resulted in parole-violation charges relating to domestic violence involving VO and sexual abuse of AO. Defendant was arrested on November 21, 2017 for his alleged parole violation. A parole revocation hearing was held, and defendant was found guilty of physical abuse of VO and sexual abuse of AO.

On March 1, 2018, a complaint was authorized charging defendant with two counts of CSC-I, MCL 750.520b(2)(b), and two counts of CSC-II, MCL 750.520c(2)(b). The warrant was signed on March 13, 2018. Defendant was arraigned on the warrant on April 23, 2018. A preliminary examination was held on May 11, 2018. The district court dismissed the charged counts of CSC-I on the basis that insufficient evidence had been presented to support the charges, but bound defendant over on the charged counts of CSC-II.

The case proceeded to a jury trial. Jury selection began on February 5, 2019. The parties appeared on February 6, 2019, but the prosecutor was ill. Pursuant to the parties' stipulation, the trial court dismissed the potential jurors and rescheduled the trial for March 12, 2019. The parties appeared for trial on March 12, 2019. The prosecution informed the trial court that AO and her brother, both of whom were expected to testify during trial, had the flu and were unable to appear. The prosecution asserted that the circumstances provided good cause for an adjournment and requested a continuance. Defense counsel opposed the prosecution's request for a continuance because defendant had already been incarcerated for an extended period of time. Defense counsel asserted that the case should be dismissed and the charges should be reissued. The trial court dismissed the case without prejudice and stated that the prosecution could reissue the charges.

On the same day, the prosecution charged defendant with two counts of CSC-I and two counts of CSC-II. The warrant was signed on March 13, 2019. On July 2, 2019, the Michigan Department of Corrections (MDOC) issued a 180-day notice under MCL 780.131. Defendant was arraigned on August 13, 2019. Defendant stood mute, and a plea of not guilty was entered by the district court on each count. A preliminary examination was held on September 20, 2019. Defendant was bound over on the charged counts of CSC-I and CSC-II.

Trial was scheduled for February 12, 2020. One month before trial, defendant moved to dismiss the charges alleging speedy-trial and 180-day violations. Although defendant did not dispute that the prosecution's witnesses were sick and unavailable to appear for the March 2019 trial, he argued that the prosecution could have had defendant arraigned immediately after the

warrant was reissued in March 2019 as opposed to waiting until August 2019. Defendant maintained that his extended incarceration caused undue anxiety and impaired his defense.

In response, the prosecution argued that the time should be calculated from the August 2019 arraignment because the first case was dismissed without prejudice at defendant's request. Because the time period since the arraignment was less than six months, the prosecution asserted that there was no violation. Even assuming that the time period began to run with defendant's initial arraignment in April 2018, the prosecution maintained that an analysis of the four-factor test did not establish a speedy-trial violation for the 21-month delay. The prosecution further argued that there were no violations of the 180-day rule because defendant was arraigned within 36 days of the MDOC's 180-day notice to the prosecutor and the prosecutor promptly readied the case for trial.

At the motion hearing, the trial court clarified with defense counsel, "What [defendant]'s talking about is the delay between the time the warrant was issued on March 13th of 2019, and the time that he was arraigned on the new warrant in response to the MDOC letter of July 2nd, 2019; is that correct?" Defense counsel responded, "That's correct." The trial court found that defendant was arraigned within 180 days of the MDOC's notice to the prosecutor and thus concluded that there was not a speedy-trial or a 180-day violation. The trial court denied defendant's motion, but noted that the issue could be revisited if it was determined that evidence was lost.

The case proceeded to a four-day jury trial. Defendant was convicted as charged and sentenced as indicated. Defendant moved for a judgment of acquittal or a new trial on several grounds. The trial court held that a new trial was warranted. The trial court found that the second preliminary examination did not comply with MCR 6.110(F) because it was conducted by a different judge. The trial court concluded that defendant was denied his due-process right to a fair proceeding. The trial court further held that defense counsel was ineffective by failing to assert that the second preliminary examination did not comply with MCR 6.110(F), and failing to move to quash the CSC-I charges. The prosecution appealed by delayed leave granted,[3] and this Court reversed.[4]

On remand, defendant renewed his motion for new trial on the issues that the trial court did not address in his initial motion. In particular, defendant argued that his trial counsel did not properly address the speedy-trial and 180-day violation and thus was ineffective. Defendant also argued that the prosecutor committed misconduct during her closing argument by evoking sympathy and vouching for the victim's credibility, and trial counsel was ineffective for failing to object. The trial court denied the motion. This appeal followed.

---

[3] *People v Green*, unpublished order of the Court of Appeals, entered August 10, 2021 (Docket No. 357640).

[4] *People v Green*, unpublished per curiam opinion of the Court of Appeals, issued June 30, 2022 (Docket No. 357640).

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence at trial did not establish that defendant's mouth or tongue touched AO's genital opening to support the two CSC-I convictions. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (cleaned up). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

There is sufficient evidence for a guilty verdict when "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Mikulen*, 324 Mich App at 20. "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

Defendant challenges his CSC-I convictions under MCL 750.520b(2)(b), which provides that an offender is guilty of CSC-I if he sexually penetrated another person, that person was less than 13 years old, and the offender was 17 years old or older. MCL 750.520a(r) defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of another person's body . . . ." "An act of cunnilingus, by definition, involves an act of sexual penetration." *People v Legg*, 197 Mich App 131, 132; 494 NW2d 797 (1992). This Court has recognized that "cunnilingus requires the placing of the mouth of a person upon the external genital organs of the female which lie between the labia, or the labia itself [sic], or the mons pubes [sic]." *Id*. at 133 (cleaned up; alterations in original).

At trial, AO testified that, on the first occasion, defendant lured her into the basement, pulled her pants and underwear down, touched her "private part" with his tongue and put his tongue "on top of [her] private part." AO described her "private part" as what she uses to pee. AO testified that defendant's tongue also touched the part where she wipes. AO testified that, on the second occasion, defendant pulled her into the basement while she cried and resisted. Defendant pulled AO onto a table, pulled her pants down, and used his fingers and mouth to touch her "private part" in the area where she wipes. This testimony, if believed, satisfies the legal definition of cunnilingus and thus "penetration." Defendant did not challenge that AO was under the age of 13 or that defendant was older than 17 at the time of the offenses.

Although AO's brother did not observe defendant's mouth or tongue on AO's vagina, "[t]he testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g." MCL 750.520h. Therefore, the jury could find defendant guilty of CSC-I based solely on AO's testimony. See *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016) ("In criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated."). Defendant argues that AO's testimony was not credible because it was inconsistent and contradicted by her brother's testimony. But this was a determination for the jury. See *id*. at 181-182 ("[W]itness credibility is a question for the fact-finder, and this Court does not interfere with the fact-finder's role."). There was sufficient evidence to enable the jury to find beyond a reasonable doubt that defendant was guilty of two counts of CSC-I.

## III. VERDICT FORM

Defendant further asserts that the verdict form improperly foreclosed the jury's ability to return a general verdict of CSC-I without special findings regarding AO's and defendant's respective ages. Alternatively, defendant claims that trial counsel was ineffective by failing to object to the verdict form. We disagree.

## A. WAIVER

Generally, we review claims of instructional error de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). Constitutional questions are reviewed de novo and the trial court's findings of fact, if any, are reviewed for clear error. *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008) (cleaned up).

"The verdict form is treated as, essentially, part of the package of jury instructions." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012). "A party must object or request a given jury instruction to preserve the error for review." *People v Sabin*, 242 Mich App 656, 657; 620 NW2d 19 (2000), citing MCL 768.29. "A defendant waives an issue by expressly approving of the trial court's action. When the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019) (citations omitted). Because trial counsel expressly approved the trial court's instructions to the jury, which included the verdict form, appellate review of this issue has been waived.[5] *Id*. See also *Kowalski*, 489 Mich at 503 ("[B]ecause defense counsel here explicitly and repeatedly approved the instruction, defendant has waived the error.").

## B. DEFENSE COUNSEL WAS NOT INEFFECTIVE

---

[5] During trial, the court asked the parties. "[A]re you satisfied with the reading of the final instructions?" Trial counsel expressly stated, "Yes, your Honor, satisfied."

Alternatively, defendant claims that trial counsel was ineffective by failing to object to the jury verdict form and the instructions given. To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther*[6] evidentiary hearing in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or move in this Court to remand for a *Ginther* hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant raised several claims of ineffective assistance of counsel in his motion for new trial and requested a *Ginther* hearing on those issues, but he did not challenge trial counsel's failure to object to the jury form and instructions as given. Because there was no *Ginther* hearing, our review is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up). We will not find trial counsel to be ineffective where an objection would have been meritless or futile, *id.*, nor second-guess matters of trial strategy or "assess counsel's competence with the benefit of hindsight[,]"*Abcumby-Blair*, 335 Mich App at 237 (cleaned up).

Defendant concedes that the jury was properly instructed as to each element of CSC-I, but contends the verdict form did not allow for a general finding that he was guilty of CSC-I but not guilty of additional special findings AO was less than 13 years old and defendant was 17 years old or older when the offense occurred, which exposed defendant to a mandatory 25-year minimum sentence under MCL 750.520b(2)(b). Defendant asserts that trial counsel was ineffective by waiving and extinguishing any potential error with the jury verdict form.

The jury instruction package includes the verdict form. *Eisen*, 296 Mich App at 330. "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. Further, a criminal defendant is deprived of his constitutional right to a jury trial when the jury is not given the opportunity to return a general verdict of not guilty." *People v Wade*, 283 Mich App 462, 467; 771 NW2d 447 (2009) (cleaned up). "The pertinent model jury instructions must be given in each action in which jury instructions are given if the model instructions are applicable, accurately state the applicable law, and are requested by a party." *People v Montague*, 338 Mich App 29, 38; 979 NW2d 406 (2021) (cleaned up).

Defendant argues that the verdict form should have conformed to the model verdict form, M Crim JI 3.32, which directs the jury to make special findings regarding the respective ages of a defendant and complainant after reaching a guilty verdict of CSC-I. Because trial counsel did not request that the trial court use the model verdict form, the trial court was not required to conform the verdict form to M Crim JI 3.32. *Id.* Thus, whether trial counsel's approval of the trial court's

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

jury instructions was objectively unreasonable turns on whether the court's instructions "fairly presented the issues to be tried and sufficiently protected the defendant's substantial rights." *Id*. Under MCL 750.520b(1)(a), a person is guilty of CSC-I if he or she engages in sexual penetration with another person and "[t]hat other person is under 13 years of age." MCL 750.520b(2)(b) further provides that a violation that is committed "by an individual 17 years of age or older against an individual less than 13 years of age" is punishable "by imprisonment for life or any term of years, but not less than 25 years."

The trial court instructed the jury regarding the elements of CSC-I contained in M Crim JI 20.1 and 20.30b, and that in order to find defendant guilty on both counts, the jury had to find beyond a reasonable doubt:

> In Count One, the Defendant is charged with the crime of first-degree criminal sexual conduct. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

> First, that the Defendant engaged in a sexual act that involved touching of [AO's] genital opening or genital organs with the Defendant's mouth or tongue.

> Second, that [AO] was less than 13 years old when the offense occurred.

> And, third, that the Defendant was 17 years of age or older when the offense occurred.

> The Defendant is charged in Count Two with the crime of first-degree criminal sexual conduct. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

> First, that the Defendant engaged in a sexual act that involved touching of [AO's] genital opening or genital organs with the Defendant's mouth or tongue.

> Second, that [AO] was less than 13 years old when the offense occurred.

> And, third, that the Defendant was 17 years of age or older when the offense occurred.

The verdict form provided the jury with the following options for the CSC-I charges:



**VERDICT FORM**

POSSIBLE VERDICT
You may return only one verdict per count

CT 1 – CRIMINAL SEXUAL CONDUCT – FIRST DEGREE

_____ NOT GUILTY

OR

✕ GUILTY OF CRIMINAL SEXUAL CONDUCT – FIRST DEGREE

CT 2 - CRIMINAL SEXUAL CONDUCT – FIRST DEGREE

_____ NOT GUILTY

OR

✕ GUILTY OF CRIMINAL SEXUAL CONDUCT – FIRST DEGREE

Read in their entirety, the combined effect of the court's CSC-I instruction and corresponding CSC-I options on the verdict form fairly presented the issues to be tried and sufficiently protected defendant's rights. See *Wade*, 283 Mich App at 464 ("Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. And even if somewhat imperfect, instructions do not create error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights.") (citations omitted). The absence of a special findings section regarding defendant and AO's respective ages on the verdict form did not improperly foreclose a general finding of CSC-I, because the trial court clearly instructed the jury that in order to return a guilty verdict for CSC-I, it had to find that AO was younger than 13 years old and defendant was 17 years of age or older.

Further, the jury heard AO testify that she was born in August 2006, meaning that she was 11 years old when the sexual assaults occurred in 2017. The jury also heard that defendant was born in July 1975, meaning that he was 42 years old during the relevant time. The ages of AO and defendant were not disputed. This testimony was sufficient for the jury to find defendant guilty beyond a reasonable doubt as to MCL 750.520b(2)(b) and his and AO's respective ages. Defendant has not shown that if trial counsel asked for the verdict form to conform to M Crim JI 3.32, the result of the proceedings would have been different. Accordingly, trial counsel was not ineffective by failing to object to the jury verdict form and the instructions given.

## IV. JURY DELIBERATIONS

Defendant also argues that the trial judge infringed on defendant's due-process right to a fair trial and coerced a verdict by telling the jury that a transcript of the prosecutor's redirect of AO could possibly be prepared "at some point" in response to the jury's request for the transcript during deliberations. Alternatively, defendant claims that trial counsel was ineffective by failing to object to the instruction and acquiescing. We disagree.

## A. WAIVER

Generally, "[t]his Court reviews decisions regarding the rereading of testimony for an abuse of discretion." *People v Davis*, 216 Mich App 47, 56; 549 NW2d 1 (1996) (cleaned up).

"A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722–723; 835 NW2d 399 (2013). "A trial court necessarily abuses its discretion when it makes an error of law." *Id*. at 723.

Less than one hour after the jury began its deliberations, the jury asked whether it could "see or hear transcript of prosecutor's redirect of [AO]?" Outside the presence of the jury, the trial court told the parties:

> [P]ursuant to MCR 2.513(p) [sic], I'm going to bring them out and I'm going to tell them that we don't have real time court reporting but that I am not foreclosing the possibility of having the testimony reviewed at a later time, having a transcript produced at a later time, but at this time I'm going to direct them to continue their deliberations.

The prosecutor and defendant's trial counsel each responded, "Okay."

The trial court brought the jury back into the courtroom and instructed:

> Ladies and gentlemen, I received a note from you asking if you could have the transcript played or reviewed for the prosecutor's redirect of [AO].
>
> And pursuant to MCR 2.513(p) [sic], I am not going to foreclose the possibility of producing a transcript but we don't have real time court reporting here in Wayne County so we would have to prepare a transcript. I'm not foreclosing the possibility of having that testimony prepared at some point but I am going to at this time direct you to continue to deliberate without the requested review, okay?

After the trial court instructed the jury, it asked, "Counselors, are you satisfied with that instruction?" Trial counsel expressly stated, "Satisfied, your Honor." Approximately 40 minutes later, the jury indicated that it had reached a verdict. Because defendant's trial counsel expressed satisfaction with the trial court's refusal of the jury's request and its subsequent instruction to the jury, defendant has waived appellate review of this issue. See *People v Carter*, 462 Mich 206, 214-215; 612 NW2d 144 (2000).

## B. DEFENSE COUNSEL WAS NOT INEFFECTIVE

Alternatively, defendant claims that his trial counsel was ineffective by failing to object to the instruction and acquiescing. Defendant raised several claims of ineffective assistance of counsel in his motion for new trial and requested a *Ginther* hearing on those issues, but he did not challenge trial counsel's failure to object to the trial court's response to the jury's question. Because there was no *Ginther* hearing, our review is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

MCR 2.513(P) provides, in relevant part:

> If, after beginning deliberation, the jury requests a review of certain testimony . . . the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court *may* make a video

or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, *may* be made available to the jury for its consideration. The court *may* order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed. [Emphasis added.]

A defendant "does not have a right to have a jury rehear testimony. Rather, the decision whether to allow the jury to rehear testimony is discretionary and rests with the trial court." *Carter*, 462 Mich. at 218.[7] As long as a trial court does "not foreclose the possibility of the jury obtaining transcripts in the future," its denial of a jury's request to review testimony will not violate the court rule. *People v McDonald*, 293 Mich App 292, 297; 811 NW2d 507 (2011). In *McDonald*, this Court found that the trial court did not err by denying the jury's request to rehear testimony because "the trial court emphasized that it was merely denying their request 'at this time,' " and the jury had only been deliberating for an hour. *Id*. Although this Court opined that the better practice may have been to tell the jury explicitly that they could make another request if they were unable to reach a verdict without reviewing the testimony, this Court did not find any error. *Id*.

In this case, the jury requested to review AO's testimony less than one hour after it began deliberations. The trial court noted the practical delay in getting the transcripts and told the jurors to "continue deliberating" for the time being. Under the circumstances, the trial court did not abuse its discretion by denying the jury's request at that time. The trial court also did not err by instructing the jury that it was not foreclosing the possibility of preparing a transcript "at some point." Unlike the trial court in *Carter*, which defendant relies on, the trial court did not inform the jury that the transcripts would not be available for weeks or months. And unlike the trial courts in *People v Howe*, 392 Mich 670; 221 NW2d 350 (1974), and *People v Smith*, 396 Mich 109; 240 NW2d 202 (1976), which defendant also relies on, the trial court did not inform the jury that it would not read back any testimony at all. The trial court did not set a deadline or foreclose the possibility of the jury obtaining transcripts in the future and thus its instruction was within its discretion afforded by MCR 2.513(P). On this record, we cannot conclude the trial court coerced a jury verdict. For these reasons, trial counsel's express approval of the trial court's refusal of the jury's request and the court's subsequent instruction was not objectively unreasonable, *Head*, 323 Mich App at 539, and the trial court did not abuse its discretion by denying defendant's motion for a new trial on this issue.

## V. SPEEDY-TRIAL AND 180-DAY VIOLATIONS

Next, defendant maintains that he was denied effective assistance of counsel by trial counsel's abandonment of the argument that defendant's speedy-trial and 180-day violations were based on a 22-month delay. We disagree.

---

[7] In *Carter*, the court rule at issue was MCR 6.414(H). *Carter*, 462 Mich at 208. Subsequently, MCR 6.414(H) was renumbered to MCR 6.414(J), though the language of the subsection remained the same. Effective September 1, 2011, this court rule was repealed and replaced by MCR 2.513(P). 489 Mich clxxx. The relevant language remains substantively the same.

Whether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and constitutional law. *People v Jones*, __ Mich App __, __; __ NW2d __ (2024) (Docket No. 365590); slip op at 3. Because the trial court denied defendant's request for a *Ginther* hearing, our review of this issue is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

## A. SPEEDY TRIAL

In *Jones*, this Court explained a criminal defendant's right to a speedy trial:

> Both the United States and Michigan Constitutions guarantee the right in criminal prosecutions to a "speedy" trial. US Const, Am VI; Const 1963, art 1, § 20. "Whenever the defendant's constitutional right to a speedy trial is violated, the defendant is entitled to dismissal of the charge with prejudice." MCR 6.004(A). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). "[A] defendant's right to a speedy trial is not violated after a fixed number of days." *Id*. "In determining whether a defendant has been denied the right to a speedy trial, we balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id*. at 261-262. [*Jones*, __ Mich App at __; slip op at 3.]

"These factors are often known as the *Barker* factors, as they were first announced by the United States Supreme Court in *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972)." *People v Smith*, __ Mich App __, __; __ NW3d __ (2024) (Docket No. 362114); slip op at 3 n 1.

The first *Barker* factor is undisputed. Defendant concedes on appeal that the time did not begin to run at the time of his arrest for the alleged probation violation. Rather, he contends that it ran from the date of his April 23, 2018 arraignment on the original charges. Defendant's trial began in February 2020, approximately 22 months later. The prosecution agrees that there was a 22-month delay. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Williams*, 475 Mich at 262. "Under the *Barker* test, a 'presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Id*. (cleaned up).

The second *Barker* factor is the reason for delay. "[C]ourts may consider which portions of the delay were attributable to each party when determining whether a defendant's speedy trial rights have been violated and may attribute unexplained delays—or inexcusable delays caused by the court—to the prosecution." *People v Lown*, 488 Mich 242, 261-262; 794 NW2d 9 (2011) (cleaned up). "Although delays inherent in the court system . . . are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Smith*, __ Mich App at __; slip op at 3 (cleaned up).

Defendant asserts that all of the pretrial delays were attributable to the prosecution. But the record reflects that some delays were attributable to defense actions or neutral events. Defendant's initial trial was scheduled to begin on October 9, 2018. From April 2018 through October 4, 2018, the record reflects normal pretrial proceedings. The prosecution concedes that this time six-month period should be attributed to it, but with a neutral tint because there is no evidence that the prosecution deliberately delayed the proceedings. We agree.

On October 4, 2018, defense counsel withdrew. Trial was adjourned to February 5, 2019 at defendant's request because of the change in counsel. This four-month delay is attributable to defendant. See *Williams*, 475 Mich at 263 (finding no clear error in the trial court's finding that the defendant was responsible for a delay when newly-appointed successor defense counsel needed to familiarize himself with the defendant's case).

The parties appeared for trial on February 5, 2019, and began jury selection. However, they depleted the jury pool and were not able to complete selection on that day. Trial was set to continue on February 6, 2019. But the prosecutor was ill. The parties stipulated to adjourn the trial to March 12, 2019. The prosecution concedes that this one-month period should be attributed to it.

The parties appeared for the March 12, 2019 jury trial, but because AO and her brother were ill, the prosecution asserted that the circumstances provided good cause for an adjournment and requested a continuance. Defense counsel opposed the prosecution's request for a continuance and, instead, asserted that the case should be dismissed and the charges reissued. The trial court dismissed the case without prejudice and stated that the prosecution could reissue the charges. The prosecutor stated that the charges would be refiled that day and that defendant "would be rearrested" that day as well.

The warrant for the second charges was signed on March 13, 2019, but defendant was not arraigned until August 13, 2019. The prosecution argues that it did not know that defendant remained incarcerated after the initial charges were dismissed. There is no evidence refuting this argument. Defendant was serving time on unrelated convictions as a result of his parole violations.[8] The MDOC did not inform the prosecution that defendant was incarcerated until July 2, 2019. The prosecution argues that this 5-month delay should be attributable to defendant. Because the prosecution was aware that defendant was incarcerated for at least one month before he was arraigned, one month will be attributed to the prosecution. The remaining four months will be given a neutral tint and only minimal weight.

Following the September 20, 2019 preliminary examination, defendant was bound over on the charged counts of CSC-I and CSC-II. At the October 15, 2019 calendar conference, the circuit court scheduled trial to begin on February 12, 2020. The record reflects that the prosecution was ready to proceed to trial and did not take any action to delay the scheduled trial date, which

---

[8] The 180-day notice reflects that defendant's maximum release date was October 22, 2020, and that parole was recommended contingent on defendant's completion of the Michigan Prisoner ReEntry Initiative In-Reach.

-12-

commenced as scheduled without any adjournments. Therefore, the six months from the time of arraignment to the time of trial will be given a neutral tint and only minimal weight.

Examining each period of delay, six months are attributable to the prosecutor, four months are attributable to defendant, and 12 months are neutral and thus assigned minimal weight. When considered together, there is no evidence that the prosecution is substantially to blame for the delays in this case or that they were unwarranted.

The third *Barker* factor is defendant's assertion of the right to a speedy trial. Defendant concedes that the assertion occurs with the filing of a motion. Defendant moved for dismissal on January 9, 2020, which was just one month before trial began. This factor weighs against defendant.

The final factor is the prejudice to defendant caused by the delay. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense." *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). "Prejudice to his person would take the form of oppressive pretrial incarceration leading to anxiety and concern." *Id*. "Prejudice to his defense might include key witnesses being unavailable." *Id*. "Impairment of defense is the most serious." *Id*. "Every incarceration results in a degree of prejudice to the person." *Id*. We evaluate whether the ability to defend oneself "was in any significant way prejudiced." *People v Chism*, 390 Mich 104, 115; 211 NW2d 193 (1973).

There is no evidence of prejudice. First, defendant claims that he was personally prejudiced because his parole status precluded any credit for the time he was incarcerated. The record reflects that defendant was incarcerated serving sentences on two unrelated convictions for parole violations. Even if defendant's trial has been sooner and he was convicted, he would have been required to serve the sentences consecutively to the sentences for which he was on parole at the time he committed the offenses in this case. See MCL 768.7a(2). Defendant also broadly claims that he suffered prejudice to his defense because the length of time could have caused testimony to change and shift. But he has not elaborated on his argument or provided any evidence. Defendant further asserts that the delay allowed the prosecutor to add the additional charges. However, the charges were added after the initial complaint was dismissed without prejudice at defendant's request.

Although there was a 22-month delay, the prosecution has rebutted the presumption of prejudice. Accordingly, trial counsel's abandonment of the 22-month-delay argument was not objectively unreasonable, *Head*, 323 Mich App at 539, and the trial court did not abuse its discretion by denying defendant's motion for a new trial on this issue.

## B. 180-DAY RULE

The 180-day rule is outlined in MCL 780.131(1), which provides in relevant part:

Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered

-13-

to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. . . .

A 180-day rule violation will result in the following consequences: "[N]o court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." MCL 780.133. A violation of the 180-day rule is distinct from a speedy-trial violation. *People v Witkoski*, 341 Mich App 54, 60; 988 NW2d 790 (2022). Under the 180-day rule, trial does not necessarily have to occur within 180 days. *Id.*; see also *People v Hendershot*, 357 Mich 300, 304; 98 NW2d 568 (1959) ("The statute does not require the action to be commenced so early within the 180-day period as to insure trial or completion of trial within that period."). Rather, "[i]f . . . apparent good-faith action is taken well within the period and the people proceed promptly and with dispatch thereafter toward readying the case for trial, the condition of the statute for the court's retention of jurisdiction is met." *Hendershot*, 357 Mich at 304.

As explained by our Supreme Court in *Lown*, 488 Mich at 246:

The object of this rule is to dispose of new criminal charges against inmates in Michigan correctional facilities; the rule requires dismissal of the case if the prosecution fails to commence action on charges pending against an inmate within 180 days after the [MDOC] delivers notice of the inmate's imprisonment . . . [b]ut the rule does not require that a *trial* be commenced or completed within 180 days of the date notice was delivered.

The prosecutor must act promptly to move the case to the point in which it is ready for trial within the 180-day period. *Id.*

The *Lown* Court further clarified:

[T]he statutory 180-day period is, by the plain terms of the statute, a fixed period of consecutive days beginning on the date when the prosecutor receives the required notice from the [MDOC]. Thus, the relevant question is not whether 180 days of delay since that date may be attributable to the prosecutor, but whether action was commenced within 180 calendar days following the date the prosecutor received the notice. If so, the rule has been satisfied unless the prosecutor's initial steps are followed by inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly." Accordingly, a court should not calculate the 180-day period by apportioning to each party any periods of delay after the [MDOC] delivers notice. [*Id.* at 246-247 (cleaned up).]

In this case, defendant argues that the 180-day rule requires that he be tried within 180 days of the date that the prosecution recharged him on March 13, 2019 because the prosecution had actual knowledge that defendant was incarcerated within the MDOC for his parole violation. First, MCL 780.131(1) and MCR 6.004 plainly state that the 180-day period is triggered when the

-14-

MDOC delivers "written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint." Further, the rule does not require that a trial commence or be completed within the 180-day period. *Lown*, 488 Mich at 246. The relevant question is "whether action was commenced within 180 calendar days following the date the prosecutor received the notice." *Id*. at 247.

The MDOC's July 2, 2019 written notice was received by the prosecution on July 9, 2019. Defendant was arraigned on the new charges on August 13, 2019. A preliminary examination was held on September 20, 2019, and defendant was bound over to the circuit court. At the October 15, 2019 calendar conference, the court scheduled trial to begin on February 12, 2020. At the final conference, the court directed that all motions be filed by January 10, 2020. None of these dates were adjourned and trial commenced as scheduled. The record does not support that the prosecution failed to act in good faith or to promptly bring this case to trial after the MDOC delivered its July 2, 2019 notice. Accordingly, trial counsel's abandonment of her initial 180-day rule argument was not objectively unreasonable, *Head*, 323 Mich App at 539, and the trial court did not abuse its discretion by denying defendant's motion for a new trial on this issue.

## VI. PROSECUTORIAL CONDUCT

Defendant maintains that he was denied a fair trial because the prosecutor made inappropriate comments during closing arguments. Alternatively, he claims that his trial counsel was ineffective by failing to object. We disagree.

"Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). Because defendant did not object and request a curative instruction at trial, *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020), our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain-error rule, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the trial court proceedings. *Id*. at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

"A prosecutor 'is the representative . . . of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' " *Evans*, 335 Mich App at 89, quoting *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935). We review prosecutorial misconduct issues on a case-by-case basis by reviewing "the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (cleaned up). "The prosecutor's statements are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*. (cleaned up). "Generally, prosecutors are given great latitude regarding their arguments and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *Id*. (cleaned up). A prosecutor "need not speak in the blandest of all possible terms" when arguing the case. *Blevins*, 314 Mich App

at 355 (cleaned up). We will not "find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Defendant argues that the prosecutor disparaged defendant's exercise of his right to a jury trial and his right to confront AO by asserting during closing argument:

> think about the other things that these kids could be doing or that Ms. Oliver could be doing with two thirteen year olds, and eight year old and a one year old, with these kid having to go to school. For the last two-and-a-half years they have been following through with all of these court dates and finally got to tell their story to you.

Defendant claims there is a strong likelihood that these comments caused the jury to convict defendant because they believed defendant forced AO to endure a trial. Defendant has taken this comment out of context. The prosecutor was discussing that this matter was a credibility contest. Immediately before this the above comment, the prosecutor stated, "I know that the Defendant has said that they have no reason to lie." And immediately after the above comments, the prosecutor stated:

> It's a question of who do you believe? Do you believe [AO] and [her brother] or do you believe the Defendant who says that he's perfect and never would do this even though, again, they have no reason to lie? If you believe [her brother] and [AO] you must find the Defendant guilty. But if you believe the Defendant, that he was perfect, that he does all this stuff for these kid [sic], they love him and he would never do this, if you believe that, then find him not guilty. But if you believe these kids, then find him guilty on all counts.

Reviewing the prosecutor's remarks in context of the entire record, *Mullins*, 322 Mich App at 172, the prosecutor's comments did not invade defendant's rights to a jury trial and to confront witnesses.

Defendant further contends the prosecutor improperly vouched for the victim's credibility. Indeed, "[a] prosecutor may not vouch for the credibility of a witness by conveying to the jury that [she] has some special knowledge that the witness is testifying truthfully." *People v Clark*, 330 Mich App 392, 434; 948 NW2d 604 (2019). But a "prosecutor may . . . argue from the facts that a witness is worthy of belief." *Id.* "The prosecutor also may comment on [her] own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Isrow*, 339 Mich App 522, 529-530; 984 NW2d 528 (2021) (cleaned up).

During closing argument, the prosecutor stated that AO "had no reason to lie," that AO and her brother "don't have any reason to lie," and "the way that [AO and her brother] testified was honest." We must review these remarks in context of the entire record. *Mullins*, 322 Mich App at 172. The prosecutor never asserted that she had some special reason to know the victim was

telling the truth, but instead, merely encouraged the jury to consider the circumstances regarding the victim's testimony. We have repeatedly held that an argument related to why the jury should believe a certain witness on the basis of the facts admitted at trial is not an instance of vouching. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 426; 884 NW2d 297 (2015) (cleaned up); *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). This is especially true in a case such as this, where the ultimate decision of the jury comes down to a credibility battle between witnesses. *Jackson*, 313 Mich App at 426. The prosecutor did not engage in any misconduct that deprived defendant of a fair trial. Further, any potential prejudice was avoided by the court's instruction to the jury:

> The lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept the things the lawyers say that are supported by the evidence or by your own common sense and general knowledge.

Accordingly, trial counsel's failure to object and request a curative instruction was not objectively unreasonable, *Head*, 323 Mich App at 539, and the trial court did not abuse its discretion by denying defendant's motion for a new trial on this issue.

## VII. DEFENDANT WAS NOT DENIED A FAIR TRIAL

Through his Standard 4 brief, defendant argues that he was denied a fair trial by prosecutorial misconduct and ineffective assistance of counsel. We disagree.

## A. DEFENSE COUNSEL WAS NOT INEFFECTIVE

Because the trial court denied defendant's request for a *Ginther* hearing, our review of his ineffective-assistance-of-counsel claim is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

A defendant asserting an ineffective assistance claim bears the burden of establishing the factual predicate for the claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Defendant argues that defense counsel in the initial case was ineffective because he failed to adequately investigate the matter, which resulted in the February 6, 2019 trial date having to be adjourned. The record does not support defendant's argument. The record also reflects that both of defendant's attorneys in the first case worked to obtain records. The record also reflects that the trial court adjourned the trial for one month because the prosecutor was ill, not because defense counsel was ill-prepared.

Defendant further argues that his trial counsel was ineffective because she failed to impeach all of the witnesses and failed to admit into evidence the parole hearing tape, testimony from the investigating officers regarding the statements made by the witnesses, and AO's medical records. The record does not support defendant's arguments. Trial counsel impeached AO with inconsistencies in her testimony at trial compared to her testimony at each preliminary examination and her brother's testimony. VO was also questioned about her prior testimony. Trial counsel sought to limit the admission of the four hour parole-violation hearing tape to avoid any potential prejudice to defendant, which was a trial strategy. We will not second-guess matters of trial strategy. *Abcumby-Blair*, 335 Mich App at 237 (cleaned up). Further, testimony from the officers

regarding any statements made by AO or her brother or VO to the officers would have been inadmissible hearsay. See MRE 801(c); MRE 802.

Finally, to the extent that defendant is arguing that his trial counsel was ineffective for failing to admit the jail calls as exhibits, this evidence was hearsay that was used solely for impeachment purposes and was inadmissible as substantive proof. "When a witness claims not to remember making a prior inconsistent statement, he may be impeached by extrinsic evidence of that statement." *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). However, "[t]he purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." *Id*. Although the calls were not admissible as substantive evidence, the record reflects that portions of the calls were used for impeachment purposes. The record does not support that defense counsel's performance fell below an objective standard of reasonableness.

## B. PROSECUTORIAL CONDUCT

Defendant argues the prosecutor improperly suppressed evidence. We review de novo a defendant's due-process claim related to an alleged failure to provide evidence. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). "There is no general constitutional right to discovery in a criminal case." *People v Banks*, 249 Mich App 247, 254; 642 NW2d 351 (2002) (cleaned up). However, "[d]ue process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the disclosure." *Schumacher*, 276 Mich App at 176, citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994). To establish a due-process violation arising from the failure to disclose evidence, a defendant must show that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014).

Although defendant has framed this issue as a *Brady* violation, many of the items listed by defendant were clearly produced by the prosecutor, including police reports regarding the alleged sexual assault, AO's forensic interview, the parole-violation hearing tapes, jail calls, text messages, and AO's medical records. Instead, it appears that defendant is arguing that the prosecutor committed misconduct by failing to admit these items at trial because it would have established that the witnesses were being untruthful. Defendant's arguments have no merit. First, the law does not mandate that the prosecution admit certain evidence. "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Mikulen*, 324 Mich App at 20. "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *Blevins*, 314 Mich App at 357. Moreover, the record reflects that AO's medical records were admitted, and that defense counsel used portions of the parole-violation hearing, jail calls, and text messages for impeachment purposes. Except for AO's medical records, the items listed by defendant were inadmissible as hearsay. MRE 802.

Defendant also contends that the prosecutor failed to turn over the 911 call made by AO in August 2017 regarding an alleged break-in. But there is no evidence that such a call was made.

-18-

When defense counsel cross-examined AO, she testified that she did not recall calling the police in August 2017 to report a break-in. Because defendant has failed to establish that that call exists, he cannot demonstrate a *Brady* violation. See *Chenault*, 495 Mich at 155,

Defendant also lists VO's November 2017 domestic violence complaint and Children's Protective Services reports under his *Brady* violation claim. There is no evidence that this evidence was suppressed. Instead, defendant suggests that, if these items were produced at trial, they would have shown that the prosecution knowingly used perjured testimony at trial. Once again, the law does not mandate that the prosecution admit certain evidence. Further, these documents were inadmissible as hearsay. MRE 802. To the extent that defendant's argument can be construed as stating that his trial counsel was ineffective for failing to use these items to impeach the witnesses, this is a matter of trial strategy. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Abcumby-Blair*, 335 Mich App at 237 (cleaned up).

Defendant further asserts that the trial testimony was inconsistent with prior testimony and statements and thus his due-process rights were violated because the prosecution knowingly used false testimony. Because defendant did not object during trial to the alleged false testimony in question, this claim is unpreserved and thus our review is for plain error. *Evans*, 335 Mich App at 88. A prosecutor may not knowingly use false evidence to obtain a conviction and may not allow false testimony to go uncorrected. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment[,]" and "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009) (cleaned up). This duty arises when a witness gives false testimony as well as when a witness gives substantially misleading testimony. *Smith*, 498 Mich at 477. "[N]ot every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony[.]" *Id*. at 476 (cleaned up). "[I]t is the *effect* of a prosecutor's failure to correct false testimony that is the crucial inquiry for due process purposes[.]" *Id*. (cleaned up). "The defendant has the burden of demonstrating that a witness's testimony was, in fact, false." *People v Thurmond*, 348 Mich App 715, 736; 20 NW3d 311 (2023).

Defendant has not identified the alleged perjured testimony other than asserting that VO testified untruthfully at trial that she did not testify about the domestic violence incident. On cross-examination by defense counsel, VO clarified that she was confused when she stated that she did not go through with the domestic violence charge, "[W]hen me and my children had to go to the parole hearing and when I was told he was found guilty, I thought that was that case. Like, I've never been through this before so I didn't know that I would have to go through, you know, what we're going through now about the domestic violence case." Defendant has not met his burden of establishing that the testimony was, in fact, false. *Id*.

The issues alleged in defendant's Standard 4 lack factual and legal support to establish a claim of ineffective assistance of counsel or prosecutorial misconduct and thus defendant is not entitled to a new trial.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Sima G. Patel
/s/ Christopher P. Yates